HANOVER INSURANCE COMPANY,
Plaintiff, Appellee,

v.

PUERTO RICO LIGHTERAGE CO.,
Defendant, Appellant.

No. 76–1017.

United States Court of Appeals,
First Circuit.

Argued Feb. 15, 1977.

Decided April 29, 1977.

Jorge Bernudez Torregrosa, Hato Rey, P.R., with whom Hartzell, Ydach, Mellado, Santiago, Perez & Novas, Hato Rey, P.R., was on brief, for defendant, appellant.

Charles A. Cordero, San Juan, P.R., for plaintiff, appellee.

Before COFFIN, Chief Judge, VAN OOS-TERHOUT*, and INGRAHAM**, Senior Circuit Judges.

INGRAHAM, Circuit Judge.

Plaintiff-appellee Hanover Insurance Company recovered from defendant-appel-

* Of the Eighth Circuit, sitting by designation.

** Of the Fifth Circuit, sitting by designation.

lant Puerto Rico Lighterage Company 95% of the stipulated damages to a U.S. Navy vessel entrusted to plaintiff's insured, Puerto Rico Drydock and Marine Terminals, Inc. (Drydock), for other repairs. The jury apparently found 5% contributory negligence by Drydock.[1] On appeal Puerto Rico Lighterage claims that (1) it was entitled to assume that Drydock had furnished a seaworthy vessel for an in-harbor tow, and (2) the apportionment of fault is unconscionable. We affirm.

On July 20, 1972, the Navy delivered its tugboat YTM 534 to the drydock facilities of plaintiff's insured. Among the items to be repaired was the propeller tail shaft. The shaft was removed in drydock and reinstalled on September 26, 1972. The following day Drydock engaged defendant-appellant to tow the YTM 534 about 2,500 feet to another pier for outfitting. Appellant's tug El Morro arrived alongside the Navy vessel about 11:15 A.M. The YTM 534 was unmanned, had no crew and was a "dead ship." The tow commenced at 11:50 A.M. and ended at noon. At 1:30 P.M. Drydock personnel discovered that water had entered through the packing gland of the tail shaft.

Coupling bolts on the tail shaft had not been fastened securely. Thus propeller drag created by the crossing of the harbor caused the tail shaft sleeve to slip out of the packing gland. The rudder prevented the propeller from pulling the shaft out completely. Salt water damage necessitated repairs costing $62,769.03. Plaintiff-appellee paid that amount and was subrogated to the rights of Drydock.

Plaintiff's theory at trial was that defendant's failure either to inspect the vessel or to inquire of Drydock as to tow-worthiness constituted actionable negligence. Freddy Solis, a licensed tug boat captain and former employee of defendant (but not the captain of the El Morro), testified for plaintiff in support of this view. There was evidence that the harbor practice was to inquire or inspect. Defendant showed that on the morning of the tow Drydock personnel had inspected the packing gland for watertightness. The coupling bolts were only two feet from the packing gland. Having a diameter of eighteen inches, the bolts were hardly inconspicuous. However, plaintiff distinguished between inspections for watertightness and inspections for towworthiness. The jury deliberated for several hours before reaching its verdict.

Defendant's motions for directed verdict and judgment non obstante veredicto, as well as its request for certain instructions,[2]

1. The court's charge included the following instructions:

"If the jury should unanimously find from the preponderance of the evidence in the case, that the defendant was guilty of negligence which caused, in whole or in part, any damage to the plaintiff; and should further find, from a preponderance of the evidence in the case, that the plaintiff himself was guilty of some contributory negligence which contributed toward bringing about all or part of his own damages; then the total award of damages to the plaintiff must be reduced by an amount equal to the percentage of fault or contributory negligence chargeable to the plaintiff.

"There is a procedure which, if you arrive at that conclusion, you may follow. This procedure is: first, determine from the evidence in the case the full amount of all damages sustained by plaintiff as a proximate result of the conduct of defendant; next, compare the negligence or fault of the parties as shown by the evidence in the case, to determine in what proportion, figured in per-

centage, plaintiff's own fault contributed as a proximate cause of all damages suffered by the plaintiff; then, reduce the full amount of plaintiff's damages by subtracting a sum equal to the percentage of the total you find from a preponderance of the evidence in the case was caused by plaintiff's contributory negligence; and return a verdict in favor of the plaintiff for the amount remaining."

2. Appellant's requested instructions included the following:

"13. If you find that the fault of the plaintiff was such that it prevented or seriously handicapped the tug in its ability to do a workmanlike service, then I charge you to find for the defendant Puerto Rico Lighterage.

"14. The owner of the vessel to be towed must provide a vessel, not only structurally sound in all respects, but also said vessel must be in a proper state of repair.

"Thus, I charge you to find for the defendant if you find that the vessel to be towed was not in a proper state of repair when the

were grounded upon an asserted right to presume tow-worthiness unless informed otherwise or the defect was apparent. It was undisputed that Drydock did not inform defendant that the coupling bolts were loose. Since the loose bolts were "well hidden in the tow's womb," Brief for Appellant at 10, defendant argues that the condition was not apparent.

There is a notable lack of case law dealing with the precise fact situation presented here. Numerous decisions opine that the duty of the owner or its representative is to provide a seaworthy tow. See, e.g., Hart v. Blakemore, 410 F.2d 218 (5th Cir. 1969); Curtis Bay Towing Co. v. Southern Lighterage Corp., 200 F.2d 33 (4th Cir. 1952). Case law also requires the tug master "to exercise such reasonable care and maritime skill as prudent navigators employ." Stevens v. White City, 285 U.S. 195, 202, 52 S.Ct. 347, 350, 76 L.Ed. 699 (1932); Curtis Bay Towing Co., supra. The jury had ample warrant for its conclusion that both Drydock and Puerto Rico Lighterage fell short of these standards. Appellant argues that Drydock's breach of duty shuts off any inquiry into its own negligence. In the course of defending the judgment below, appellee observes that the 5% diminution of damages was overly generous to appellant for two reasons. First, it argues that the last clear chance doctrine should have been applied in this case. See Chemical Transporter, Inc. v. M. Turecamo, Inc., 290 F.2d

496 (2nd Cir. 1961). Second, it claims that tug companies are strictly liable for any damage incurred during a tow. See Fairmont Shipping Corp. v. Chevron International Oil Co., 511 F.2d 1252 (2d Cir.), cert. denied, 423 U.S. 838, 96 S.Ct. 66, 46 L.Ed.2d 57 (1975). Each party absolves itself of sin by reference to the sins of the opposing litigant.

We think it unjust to select any of the harsh outcome-determinative presumptions advanced by the parties. The evolution of admiralty law counsels in favor of the assessment of comparative fault and proportionate recovery on that basis. United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).[3] Apportionment of blame is justified in this case. Either Drydock or Puerto Rico Lighterage could have located the coupling bolts and tightened them. The YTM 534 was a dead ship; no one was abroad to prevent the tug captain from inspecting below decks. Although "the duty to inquire and the quality, kind, and scope of an inspection vary with the circumstances," South, Inc. v. Moran Towing and Transportation Co., 360 F.2d 1002, 1006 (2nd Cir. 1966), even an in-harbor tow requires precautions when a vessel is still undergoing repairs. This is not a personal injury case. Neither party is clad in the togs of the poor friendless sailor who is the traditional ward of the admiralty court. See G. Gilmore & C. Black, Law of

voyage commenced and that that was the proximate cause of the accident.

"15. I further charge you to find that a tow which sinks in fair weather and calm seas is presumed to be unseaworthy in the absence of proof that it was improperly handled by the tug."

The district judge refused to include them in the charge, commenting, "I denied them because I find that they are, well—perhaps too one-sided and slanted, and I believe that whatever is covered in those instructions has been covered already in a more general and just or equitable way in the other instructions."

**3.** The development of strict liability for towage accidents is thoroughly discussed and persuasively criticized in a student note, "Towage Accidents and the Implied Warranty of Workmanlike Service: A New Strict Liability?", 10 Ga.L.Rev. 794 (1976). In non-personal injury

cases strict liability does not afford even rough justice. It is rightfully characterized as an unreasoned extension of warranties and a heavy-handed approach. Id. at 795, 814. This bull should be kept out of the post-Reliable Transfer china shop.

Last clear chance was originally invoked by the courts to remedy the harsh rule of contributory negligence. W. Prosser on Torts at 428 (4th ed. 1971). Judge Wisdom cautioned against its use elsewhere:

"The shift in thinking, reflected in comparative negligence statutes, toward evaluating the conduct of the parties and weighing their proportionate share in the accident (which the layman does without straining his ratiocinative processes) is now leaving little elbow room for the last clear chance doctrine." Cenac Towing Co. v. Richmond, 265 F.2d 466, 470 (5th Cir. 1959).

Admiralty at 281 (2nd ed. 1975). The district judge correctly refused to insulate the appellant from an inquiry into its negligence.

Appellant also attacks the 95%–5% (i.e., 19 to 1) split on liability. Review of awards in comparative negligence cases is a recent development in this circuit. In this case, the total damage of the YTM 534 was stipulated. Therefore, appellant's complaint is directed at the proportion of fault assessed rather· than the absolute dollar amount. As noted earlier, the evidence was sufficient to enable the jury to find that both Drydock and Puerto Rico Lighterage were proximately negligent. It is not inconceivable that there will be cases where a finding of percentages of negligence is reversible error even though the finding that two actors were proximately negligent is not. In the interest of uniformity and justice, intrusion of appellate tribunals in this area should parallel the standards for review of damage awards. An appellate court is not a jury and appellant is not entitled to a trial *de novo* on the percentage finding. Nevertheless, jury verdicts on percentages of negligence, like jury damage awards, will be scrutinized to see if findings are grossly out of proportion or shocking. *See Bonn v. Puerto Rico International Airlines,* 518 F.2d 89, 92–94 (1st Cir. 1975); *Boston & Maine R.R. Co. v. Talbert,* 360 F.2d 286, 291–92 (1st Cir. 1966). If so, they will be overturned. *See Compania Trasatlantica Espanola v. Melendez Torres,* 358 F.2d 209, 214 (1st Cir. 1966). As was said in *Ganapolsky v. Park Gardens Dev. Corp.,* 439 F.2d 844 (1st Cir. 1971): "This court has often expressed its reluctance to overturn a jury award unless it is so excessive that the district court's refusal to order a new trial constitutes a manifest abuse of discretion." *Id.* at 846.

In this case the district judge reviewed the verdict and specifically found that it was neither clearly erroneous nor grossly excessive. We agree. Although appellant proved that the coupling bolts were near the packing gland, it was left for the jury to infer that the loose bolts should have been discovered during the Drydock inspection for watertightness. Appellant did not show that pre-tow inspections by ship owners or drydock operators were customary. The tug captain did not testify and reliance by appellant upon any inspection was not demonstrated. Were the members of this panel on the jury, the verdict might have been different. But in our appellate posture, we cannot say that the jury has transgressed the boundaries established above.

*The judgment is affirmed.*