In the Matter of The Complaint of BERK-LEY CURTIS BAY CO. and Moran Towing & Transportation Co., Inc., as Owner and Bareboat Charterer, Respectively of TUG GRACE MORAN, for Exoneration from or Limitation of Liability.

No. 78 Civ. 3552 (ADS).

United States District Court,
S.D. New York.

Feb. 11, 1983.

Burlingham, Underwood & Lord, New York City, for Berkley Curtis Bay Co. and Moran Towing & Transp. Co., Inc.; Kenneth H. Volk, Terry L. Stoltz, Lucas E. Andino, New York City, of counsel.

Bigham, Englar, Jones & Houston, New York City, for American Dredging Co.; Louis G. Juliano, Lawrence B. Brennan, New York City, of counsel.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., John S. Martin, Jr., U.S. Atty., Janis G. Schulmeisters, Atty. in Charge, Torts Branch, Civ. Div., U.S. Dept. of Justice, New York City, for the U.S.

## MEMORANDUM OPINION AND ORDER

SOFAER, District Judge:

On July 31, 1978 the tug *Grace Moran* and its tow the dredge *Pennsylvania* ran aground on a shoal off Rockaway Point known as Louie's Hump. The *Pennsylvania* subsequently sank and became a total loss. Members of its crew allegedly suffered personal injuries, and the United States spent $235,000 to clean-up oil which spilled from the dredge's fuel tanks. Following ten days of trial and one day of argument, this Court denied a petition to exonerate or limit the liability of Berkley Curtis Bay Co. and Moran Towing & Transportation Co., respectively the owner and the bareboat charterer of the *Grace Moran* (hereinafter collectively referred to as "Moran"). The Court further found Moran 65% at fault and American Dredging Company (hereinafter "ADC"), the owner of the dredge *Pennsylvania,* 35% at fault for all damages resulting from the accident, including the expenses incurred by the United States in cleaning up the oil spill.

Following appeals by the various parties, the case has been remanded by the Second Circuit for two purposes: first, to determine whether ADC may claim that Moran's breach of a warranty of workmanlike service ("WOWS") precludes ADC liability and, if so, whether that claim has merit; second, to clarify whether and to what extent Moran may be held liable for the government's oil-spill cleanup expenses under § 1321 of the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1321.

### I.

ADC's claim concerning Moran's breach of WOWS was not preserved in the form that it was asserted on appeal. ADC did not claim at trial that Moran's breach entitled it to recover irrespective of its own negligence. This Court—and all the parties including ADC—treated the breach of WOWS claim during and after the trial as an additional argument against Moran's petition to avoid or limit its liability. The Court found Moran liable without limitation on other grounds and, accordingly, did not

mention the WOWS claim in its oral opinion. Although the Court invited corrections to its opinion, ADC did not object to the Court's failure to divine ADC's allegedly broader purpose from its pretrial submissions. *See Desert Palace, Inc. v. Salisbury*, 401 F.2d 320, 323–24 (7th Cir.1968).

■ Appeals based on "claims and defenses that were pleaded but not properly pursued in the trial court" should not be allowed "except in the most extraordinary circumstances to prevent a miscarriage of justice." *Broadway Delivery Corp. v. United Parcel Service*, 651 F.2d 122, 126 (2d Cir.1981). There is no miscarriage of justice in not allowing ADC to attempt to avoid liability for its share of fault for the damages in this case.

ADC's assertion that Moran's breach of WOWS precludes ADC liability is tenuous under existing law. In *Fairmont Shipping Corp. v. Chevron International Oil Co., Inc.*, 511 F.2d 1252, 1260 (2d Cir.1975) the Second Circuit suggested that a tow could not be held liable for contributory negligence (short of "active hindrance") once it was established that damages had been caused in part by a tug's breach of WOWS. In *Navieros Oceanikos, S.A. v. S.T. Mobile Trader*, 554 F.2d 43, 46–47 (2d Cir.1977), however, the Circuit Court held that a breach of WOWS does not generally preclude consideration of a plaintiff's contributory negligence. *Navieros* did suggest in dicta that, where personal injury damages exposed a plaintiff to liability without fault under the unseaworthiness doctrine, WOWS doctrine might require indemnification regardless of the plaintiff's own fault. 554 F.2d at 46–47; *see Gaymon v. Prudential Lines, Inc.*, 473 F.Supp. 161, 164–65 (S.D.N.Y.1979). ADC's reliance on this suggestion in *Navieros* is questionable, however, given recent developments in maritime law. The fact that ADC might be strictly liable to injured seamen hardly justifies a rule that would allow it to avoid completely its own fault. The Supreme Court's decision in *United States v. Reliable Transfer Co.*, 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975) plainly condemns such a rule by its emphatic declaration that damages in admiralty should be allocated in accordance with fault. 421 U.S. at 410–11, 95 S.Ct. at 1715–1716; *see Hanover Insurance Co. v. Puerto Rico Lighterage Co.*, 553 F.2d 728, 730 & n. 3 (1st Cir.1977); Note, *Towage Accidents and the Implied Warranty of Workmanlike Service: A New Strict Liability?*, 10 Ga.L. Rev. 794, 815 (1976).

The nature of ADC's faults, moreover, makes ADC's possible avoidance of its share of liability particularly unjust. Under the WOWS indemnity theory urged by ADC, ADC could be held liable only if its faults constituted "active hindrance." The seriously negligent omissions of ADC do not appear to constitute "active hindrance" as that concept has been interpreted. *See Rodriguez v. Olaf Pedersen's Rederi A/S*, 527 F.2d 1282 (2d Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); *Albanese v. N.V. Nederlande Amerik Stoom v. Maats*, 346 F.2d 481 (2d Cir.), *rev'd on other grounds*, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965). But ADC's omissions may have had even more serious consequences than many forms of "active hindrance"; its omissions (*i.e.* the crew's failure to warn of the shoal and of the need to prevent resumption of tow as well as the dredge's open doors and lack of compartments) made what would have been a serious accident into an unsalvageable disaster. Moreover, the dredge was unseaworthy because of its lack of a valid certificate for oceangoing operations under 46 CFR § 90.05–25. This omission constituted a statutory violation, and the Second Circuit has emphasized that limitations on liability resulting from such violations are strongly disfavored. *Tug Ocean Prince, Inc. v. United States*, 584 F.2d 1151, 1160 (2d Cir.1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1499, 59 L.Ed.2d 772 (1979).

In sum, ADC did not properly preserve the issue of WOWS indemnification at trial, and a miscarriage of justice will not occur by denying ADC the right to raise this issue at this time. Current law is unlikely to sanction WOWS indemnification, and, in any event, such indemnification would lead

to a particularly unjust result given ADC's various omissions, including its failure to obtain a valid certificate for oceangoing operations.

## II.

 At trial the Court held Moran liable to the government for its share of the United States' oil-spill cleanup expenses under § 1321(g) of the FWPCA. Subsection (g), which the government urged at trial as the appropriate provision, applies only to sole-cause, third (*i.e.* nondischarging) parties. Moran was held only 65% at fault for the oil spillage in this case and cannot, therefore, be held liable under subsection (g). The only provision under which Moran may be held liable is § 1321(h)(2), which preserves for the government nonstatutory remedies against third parties involved in oil spills. Among the remedies preserved by subsection (h)(2) is the government's right to hold a vessel and its owner jointly and severally liable for negligent oil pollution. *United States v. M/V Big Sam,* 681 F.2d 432, 443, *reh'g denied,* 693 F.2d 451 (5th Cir.1982) (authorities collected).

 The threshold issue with regard to Moran's liability to the United States under § 1321(h)(2) concerns Moran's claim that the question of its liability under FWPCA is "moot". Moran asserts that § 1321 contains a hierarchy of remedies for government recovery of the costs of an oil-spill cleanup. According to Moran's argument, the preferred remedies in this hierarchy are found in § 1321(f) and § 1321(g), which respectively provide for discharger and sole-cause third party strict liability; so long as either of these remedies will afford the United States complete reimbursement, the remedies preserved by subsection (h)(2) should not be employed. Thus, Moran claims, because the government's claim for $235,000 is less than ADC's $300,000 limitation fund under § 1321(f), the issue of Moran liability under subsection (h)(2) is "moot".

This claim is negated by the plain language of subsection (h)(2): "The liabilities established by this section *shall in no way* affect any right ... the United States Government may have against any third party whose actions may in any way have caused or contributed to the discharge of oil or hazardous substance." 33 U.S.C. § 1321(h)(2) (emphasis added). Moran's reliance on *United States v. Bear Marine Services,* 509 F.Supp. 710, 716–18 (E.D.La. 1980) is not persuasive. In *Bear Marine,* the District Court carefully described the purposes and provisions of § 1321 in denying a third party's motion to dismiss the government's claim for oil-spill cleanup costs brought under maritime tort doctrines preserved by subsection (h)(2). Although silent as to whether the discharger's limitation fund was less than the government's reimbursement claim, the opinion plausibly asserts that subsection (h)(2)'s preservation of nonstatutory remedies was designed to assure the government an alternative source of reimbursement in the event either of the limited liability remedies provided by subsections (f) or (g) proved inadequate. Language in the opinion further suggests that, in light of this statutory design, only those costs not covered by sources available under subsections (f) or (g) may be recovered under the remedies preserved by subsection (h)(2). *Bear Marine,* 509 F.Supp. at 718–19. Such a limitation on the availability of remedies preserved by subsection (h)(2) should not, however, be read into § 1321. Although Congress may have preserved nonstatutory remedies in order to assure full government reimbursement in the event the statutory remedies proved inadequate, Congress did not tailor its preservation of nonstatutory remedies to that purpose. As noted, Congress specifically stated that the statutory remedies "in no way affect" existing nonstatutory remedies against third parties.

Moreover, there is no compelling reason why the nonstatutory remedies preserved by § 1321(h)(2) should be unavailable to the government whenever the statutory remedies provided by subsections (f) or (g) are adequate. The United States may prefer to move under subsections (f) or (g) in many cases, inasmuch as those strict-liability pro-

visions do not require proof of negligence; if, however, as in this case, a determination of negligence has already been made as to a third party, there is no reason not to allow the government to proceed separately against the negligent third party for its share of liability under maritime tort doctrines preserved by subsection (h)(2). Indeed, in this case it seems especially appropriate to allow the government to hold Moran, which was 65% responsible for the oil-spill in question, jointly and severally liable with ADC, which was only 35% responsible for the oil-spill. (Of course, if the government elects to demand reimbursement from either ADC or Moran for more than its share of fault, the party that pays for more than its share of fault will have an action for contribution from the party that pays for less than its share of fault.)

■ The second issue concerning Moran's liability to the United States under subsection (h)(2) is whether that liability is limited by the tonnage formula expressly provided in subsection (g) for strictly liable, sole-cause third parties. This issue has been recently and very thoroughly explored by the Fifth Circuit in *United States v. M/V Big Sam, supra,* which concluded that a third party's liability for negligence under principles of maritime tort preserved by subsection (h)(2) should not be affected by the limitation provision of subsection (g). Without needlessly repeating the detailed analysis contained in *Big Sam,* the plain language of subsection (h)(2) does not call for a judicial transplant of the limitation on strict liability in subsection (g) to the negligence liability of third parties unrestrictedly preserved by subsection (h)(2). *See Big Sam,* 693 F.2d at 454–56 (discussing recent Supreme Court authority on the need to avoid unnecessarily creative judicial interpretations of unambiguous statutory language). Limiting the liability of all dischargers (subsection (f)), as well as strictly liable, sole-cause third parties (subsection (g)), while not limiting the liability of negligently liable third parties, is not so illogical or irrational as to require judicial reconstruction of § 1321. *See Big Sam,* 693 F.2d at 453 n. 5 & 454 n. 8.

Moran incorrectly suggests that under this reading of the statute it will be held liable without limitation only because it was not the sole cause of the oil-spill and thus did not qualify for liability limitation under subsection (g). *See* Moran Memorandum of Law (Dec. 16, 1982) 18. If the statutory language required such a reading, the language might well be deemed sufficiently illogical and irrational to require judicial reinterpretation. It is difficult to imagine any reason why a negligent party 100% responsible for an oil-spill should be entitled to a liability limitation unavailable to a negligent party 65% at fault. The language of § 1321, however, does not require such a reading. A sole-cause, negligent third party may be held liable without limitation under subsection (h)(2) to the same extent that a contributing-cause, negligent third party may be; indeed, the defendant in *Big Sam* was just such a negligent, sole-cause third party liable under both subsection (g) and subsection (h)(2). *See* 681 F.2d at 442–43.

■ A final difficulty concerning Moran's liability under § 1321(h)(2) is this Court's original finding that Moran is not a "third party" under § 1321(f). Transcript of Trial 1162. In its appellate brief Moran urged that this finding precluded holding it liable as a "third party" under § 1321(h)(2). Moran Appellate Reply Brief (May 21, 1982) 21. The Court of Appeals noted this apparent anomaly in its statement remanding this case. Moran's briefs on remand to this Court, however, do not mention the argument. This Court's finding concerning Moran's status under § 1321(f) was significant only insofar as ADC could have otherwise avoided its strict liability as discharger by invoking the exception in subsection (f) for oil spills caused solely by a "third party." The Court's finding concerning ADC's 35% responsibility for the oil spill, however, precluded ADC from avoiding liability under any of the exceptions in subsection (f). In short, the finding that ADC was 35% at fault made the finding that Moran was not a "third party" under § 1321(f) irrelevant.

Thus the propriety of inconsistently reading "third party" in different subsections of § 1321 is not at issue here because only the use of the term in subsection (h)(2) is involved.

Moran is undoubtedly a third party under subsection (h)(2). As detailed in opinions by the Fifth and First Circuit, a narrow reading of the sole-cause "third party" exception in § 1321(f) is justified by the statute's purpose of assuring government reimbursement for clean-up costs by holding discharging vessels strictly liable. *See United States v. LeBeouf Bros. Towing Co.*, 621 F.2d 787 (5th Cir.) *reh'g denied,* 629 F.2d 1350 (1980), *cert. denied,* 452 U.S. 906, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981); *Burgess v. M/V Tamano,* 564 F.2d 964, 981–82 (1st Cir.1977), *cert. denied,* 435 U.S. 941, 98 S.Ct. 1520, 55 L.Ed.2d 537 (1978). This purpose is not served by narrowly construing the reference to "third party" in § 1321(h)(2); rather, a broad construction of the term in subsection (h)(2) serves the purpose of the statute in the same way a narrow reading of the term in subsection (f) does: by providing another source from which the government may attempt to procure reimbursement for clean-up expenses.

### III.

In conclusion, ADC may not assert a WOWS claim as a means of avoiding liability for its share of fault, and Moran and the tug *Grace Moran* may be held jointly and severally liable to the government without limitation under § 1321(h)(2). No costs to any party. The parties are directed to sub-.mit a judgment within 10 days incorporating amendments to the Court's previous judgment that are indicated by this Order.

SO ORDERED.