**STATE OF COLORADO, Plaintiff,**

v.

**ASARCO, INC., Resurrection Mining Company, the Res-Asarco Joint Venture, Defendants,**

v.

**LEADVILLE CORPORATION, Sharon Steel Corporation, C & H Development Corporation, Hecla Mining Company, Rock Hill Mines Company, Larry E. Andersen, Evelyn Furman, Herman Hauser, Calvin Hauser, Clay Hauser, Walter Plattner, William J. Whatley, Aldred T. Whatley, D.P. Canty, Margaret Plattner Counter, Third Party Defendants.**

Civ. A. No. 83–C–2388.

United States District Court,
D. Colorado.

May 13, 1985.

Robert A. Hykan, Richard L. Griffith, Janice L. Burnett, Asst. Attys. Gen., Natural Resources Section, Denver, Colo., for plaintiff.

Christopher Lane/Alan Gilbert/Ronald Eddy, Denver, Colo., Earl Madsen, Golden, Colo., Peter Cosgriff, Cosgriff, Dunn and Berry, Leadville, Colo., Richard Greengard/Robert Simon, Greengard & Senter, Donald Burkhardt, Denver, Colo., F. Alan Fletcher/John F. Waldo, Salt Lake City, Utah, John McClure/Ann Rice, Smart, Defurio & McClure, Denver, Colo., for defendants and third-party defendants.

**MEMORANDUM OPINION AND ORDER**

CARRIGAN, District Judge.

The State of Colorado instituted this action against ASARCO, Inc., Resurrection Mining Company and the Res-ASARCO Joint Venture seeking recovery of response costs and damages for injury to natural resources pursuant to § 107 of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607. The State alleges that hazardous substances have been released from the defendants' mine workings and have drained through the Yak Tunnel, near Leadville, Colorado, into the California Gulch and the Arkansas River. The State further alleges that these hazardous substances have injured natural resources, including fish, wildlife, biota, air, surface water, ground water, and drinking water.

Defendants filed third-party complaints seeking contribution from fifteen named third-party defendants who allegedly own mining claims through which the Yak Tunnel and its laterals traverse, and thus, allegedly, are co-owners of the Yak Tunnel and its laterals. Defendants allege that if they are held jointly and severally liable for the injuries to natural resources alleged in the complaint, the third-party defendants are liable over to them for the portion of the damage caused by releases from the third-party defendants' facilities.[1]

In addition, the defendants, pursuant to Rule 23, Fed.R.Civ.P., ask that I certify a class, to be represented by the named third-party defendants, consisting of all persons who have ownership and other interests in the Yak Tunnel and its laterals. It is estimated that there are 200 to 500 potential third-party defendant class members. This motion for class certification is reserved for later decision and not decided in this opinion.

At a hearing on March 29, 1985, I ordered the parties to brief the issue whether

---

**1.** Defendants dispute that they can be held jointly and severally liable for the alleged harm. If they are held liable only for the identifiable portion of the injury they caused, if any, there is, of course, no claim for contribution and no liability on the part of the third-party defendants.

there is a right to contribution under CERCLA § 107, 42 U.S.C. § 9607. Plaintiff and the third-party defendants Hecla Mining Company, Sharon Steel Corporation, Leadville Mining Corporation, William J. Whatley, Alfred T. Whatley, and D.P. Canty have moved to dismiss the third-party complaints asserting that there is no such right. Defendants, on the other hand, argue that CERCLA does provide a right to contribution.

■ A right to contribution under a federal statute may arise in either of two ways: "first, through the affirmative creation of a right of action by Congress either expressly or by clear implication; or, second, through the power of federal courts to fashion a federal common law of contribution." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2065–66, 68 L.Ed.2d 500 (1981); *see also Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981). After review of the statute and its legislative history, I conclude, for the reasons stated below, that Congress empowered the federal courts to establish a federal common law of liability under § 107, and to decide whether contribution among responsible parties shall be permitted.

To date the liability issue most litigated under § 107 has been whether CERCLA provides for joint and several liability. The Senate bill that led to CERCLA, S. 1480, originally provided for joint, several and strict liability. S. 1480, 96th Cong., 2d Sess. § 4(a), 126 Cong.Rec. 30,908 (1980) (as reported out of the Senate Committee on Environment and Public Works). Put before the compromise version of the bill was finally presented to the Senate and passed on November 24, 1980, this express provision for joint and several liability was deleted. Similarly, the bill initially passed by the House on September 23, 1980 provided explicitly for joint and several liability. H.R. 7020, 96th Cong., 2d Sess. § 3071, 126 Cong.Rec. 26,779 (1980). However, H.R. 7020 did not survive; it was deleted in toto and the bill finally passed by the House on December 3, 1980 merely substituted the Senate compromise bill that had passed in the Senate on November 24, 1980. 126 Cong.Rec. 31,950–31,964 (1980).

It is clear, however, that the deletion of all references to joint and several liability from the Act did not signify that Congress rejected those standards of liability. After reviewing the legislative history, Chief Judge Rubin concluded as follows in *United States v. Chem-Dyne Corp.*, 572 F.Supp. 802, 808 (S.D.Ohio 1983):

"A reading of the entire legislative history in context reveals that the scope of liability and term joint and several liability were deleted to avoid a mandatory legislative standard applicable in all situations which might produce inequitable results in some cases. The deletion was not intended as a rejection of joint and several liability. Rather, the term was omitted in order to have the scope of liability determined under common law principles, where a court performing a case by case evaluation of the complex factual scenarios associated with multiple-generator waste sites will assess the propriety of applying joint and several liability on an individual basis." (Citations omitted.)

Chief Judge Rubin further concluded that federal, rather than state, common law should be developed and applied and that under federally-created uniform law defendants causing an indivisible harm are subject to joint and several liability. 572 F.Supp. at 808–811. Other courts have similarly held that joint and several liability may be imposed on § 107 responsible parties. *United States v. South Carolina Recycling and Disposal, Inc.*, 20 E.R.C. 1753, 1758–60 (D.S.C. February 23, 1984); *United States v. Conservation Chemical Co.*, 589 F.Supp. 59, 62–63 (W.D.Mo.1984); *United States v. Northeastern Pharmaceutical and Chemical Co.*, 579 F.Supp. 823, 845 (W.D.Mo.1984); *United States v. A & F Materials Co., Inc.*, 578 F.Supp. 1249, 1255–57 (S.D.Ill.1984); *United States v. Wade*, 577 F.Supp. 1326 (E.D.Pa.1983).

Contribution among responsible parties was an integral part of the joint and several liability scheme of both the Senate and House bills. S. 1480 as reported out of the

Senate Committee on Environment and Public Works included a detailed contribution provision. Section 4(f) provided as follows:

"(f)(1) In any case where a person held liable under this section can demonstrate by a preponderance of the evidence that (A) the contribution of such person to a discharge, release, or disposal of a hazardous substance can be distinguished or apportioned and (B) such contribution was not a significant factor in causing or contributing to the discharge, release, or disposal or the damages resulting therefrom, the liability of such person shall be limited to that portion of the release or damages to which such person contributed.

(2) In any action brought under this section or section 6(c) of this Act, a person held jointly and severally liable with one or more other persons is entitled to seek contribution from such persons to the extent of the proportionate liability of such persons. In any case where a person held liable under this section alleges that the discharge, release, or disposal or the consequent damages are solely or in part due to the act or omission of a third party, such person retains all rights against such third party and shall be entitled to join such third party as a defendant in an action under this section or section 6(c) of this Act.

(3) Any matter or action concerning limitation or apportionment of liability under paragraph (1) or contribution under paragraph (2) of this subsection shall occur following determination of liability under subsection (a) of this section and appropriate payment of claims to any claimant, except to the extent such matter may be resolved pursuant to Rule 56 of the Federal Rules of Civil Procedure. The claimant is not an indispensable party in such matter or action.

(4) In apportioning or limiting liability of any party under this section, the trier of fact may consider factors, including—

(i) the ability of the party to demonstrate that his contribution to a discharge, release or disposal of a hazardous substance can be distinguished;

(ii) the amount of hazardous substance involved;

(iii) the degree of toxicity of the hazardous substance involved;

(iv) the degree of involvement in the manufacture, treating, transporting, disposing of the hazardous substance; and

(v) the degree of cooperation with Federal, State, or local officials to prevent any harm to the public health or the environment." 126 Cong.Rec. 30,909 (1980); *see* S. Rep. No. 96–848, 96th Cong., 2d Sess. 38–39 (1980).

H.R. 7020 as passed by the House on September 23, 1980 provided for joint and several liability, but then modified that standard by also providing a method of apportioning liability. Section 3071(a)(3) read as follows:

"(3)(A) If a generator or transporter of hazardous waste establishes by a preponderance of the evidence that only a portion of the total costs described in subsection (b) are attributable to hazardous waste generated or transported by him, such generator or transporter shall be liable under this subsection only for such portion. If the owner or operator of any inactive hazardous waste site establishes by a preponderance of the evidence that only a portion of the total costs described in subsection (b) are attributable to hazardous waste which was treated, stored, or disposed of in a period during which he owned or operated the site, such owner or operator shall be liable under this section only for such portion.

(B) To the extent apportionment is not established under subparagraph (A), the court may apportion the liability among the parties where deemed appropriate based upon evidence presented by the parties as to their contribution. In apportioning liability under this subparagraph, the court may consider among other factors, the following:

(i) the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished;

(ii) the amount of hazardous waste involved;

(iii) the degree of toxicity of the hazardous waste involved;

(iv) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;

(v) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste;

(vi) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.

(C) Following any apportionment under subparagraph (A) no person shall be required to pay in excess of his apportioned share of the total costs described in subsection (b)." 126 Cong.Rec. 26,779, 26,781 (1980).

Representative Gore introduced an amendment to § 3071 which became § 3071(a)(3)(B) above. That subsection modified § 3071's joint and several liability standard by permitting a court to apportion damages in cases where the prevailing common law of joint and several liability would not have provided for that apportionment.[2] It was Representative Gore's clearly expressed understanding, however, that even under the harsher common law standard, contribution among tortfeasors was permitted. In his remarks on the House floor, Representative Gore emphasized the interrelationship in the common law between joint and several liability, on the one hand, and contribution, on the other. He discussed approvingly *Landers v. East*

**2.** Representative Gore's amendment was intended to make § 3071 "reflect more accurately the prevailing common law doctrines." 126 Cong. Rec. 26,785 (1980). The earlier version of § 3071 had *required* courts to apportion liability among responsible parties "to the maximum extent practicable." 126 Cong.Rec. 26,779 (1980).

**3.** A number of district courts, applying common law principles, have held that one tortfeasor cannot compel the Rule 19 joinder of another in a CERCLA action. *New York v. Shore Realty Corp.*, 21 E.R.C. 1430, 1431 (E.D.N.Y.1984); *United States v. A & F Materials Co., Inc.*, 578

*Texas Salt Water Disposal Company*, 151 Tex. 251, 248 S.W.2d 731 (1952), in which the court had held two polluters jointly and severally liable for damage caused when they independently dumped salt water in a lake (a situation not unlike the asserted facts in the instant case.) Representative Gore stated:

"[T]he effect of the decision was to require the defendants, rather than the plaintiff, to show that other tortfeasors contributed to the harm and in what quantities they so contributed. This incentive to locate all other responsible parties is one of the prime considerations underlying use of joint and several liability in pollution suits. In fact, in addition to shifting the burden of proving the cause of plaintiff's injury, the court placed on the sued defendants ultimate responsibility for bringing any other defendants into the suit as codefendants. Facing the prospect of either proving that other parties were also responsible for the injury or paying the full judgment themselves, defendants would henceforth have incentive to insure that no parties have been inadvertently omitted from the suit. As the court in Landers stated:

'If fewer than the whole number of wrongdoers are joined as defendants to plaintiff's suit, those joined may by proper cross action under the governing rules bring in those omitted.'

Thus, any responsible parties not named as defendants initially by the plaintiff would be located by the named defendants and included by cross-claim."[3] 126 Cong.Rec. 26,784 (1980).

F.Supp. at 1260–61; *United States v. Northeastern Pharmaceutical and Chemical Co.*, 579 F.Supp. at 845 n. 26; *United States v. Conservation Chemical Co.*, 589 F.Supp. at 63. The appropriate procedure, assuming there is a right to contribution, is to implead a joint tortfeasor as a third-party defendant under Rule 14, Fed.R. Civ.P. This procedural distinction, however, should not obscure the main point—Representative Gore clearly stated his understanding that, under the common law, a defendant subject to joint and several liability may bring other potentially responsible parties into the suit in order to apportion liability.

Representative Gore further described the common law scheme of joint and several liability as follows:

"Under a scheme of joint and several liability, where the defendants cannot themselves establish their respective liabilities, each is responsible for the full amount, and the plaintiff may collect that full sum from any one of them. The paying defendant would then have the right to go against the other 'nonapportioned' defendants for contribution; the defendants would bear the burden of deciding who would pay how much to whom among them." 126 Cong.Rec. 26,-785 (1980).

Based on the above recounted history, I conclude that H.R. 7020, as passed by the House on September 23, 1980, provided for contribution.

Neither S. 1480 § 4(f) nor H.R. 7020 § 3071(a)(3) was retained in CERCLA as enacted. But just as deletion of specific reference to joint and several liability, in the circumstances in which CERCLA was enacted, does not signify Congressional rejection of those standards, deletion of specific provisions for contribution does not signify Congressional rejection of contribution. It is clear from the legislative history that contribution is one of the liability issues to be determined on a case-by-case basis through the common law process, rather than by specific statutory directive. Senator Randolph addressed this matter when, as principal sponsor, he presented the compromise version of S. 1480 to the Senate for its consideration. He stated:

"It is intended that issues of liability not resolved by this act, if any, shall be governed by traditional and evolving principles of common law. An example is joint and several liability. Any reference to these terms has been deleted, and the liability of joint tort feasors will be determined under common or previous statutory law." 126 Cong.Rec. 30,932 (1980).

Representative Florio had the job of explaining the compromise bill to the House. He stated:

"As originally passed, H.R. 7020 provided for joint and several liability, but qualified that standard with two statutory apportionment provisions which modified the applicability of such a standard. This bill sets forth the classes of persons (for example, owners, operators, generators) who are liable for all costs of removal or remedial action, other necessary costs of response, and damages to natural resources. Rather than announce the standard, and then cut back on its applicability, this bill refers to section 311 of the Clean Water Act and to *traditional and evolving principles of common law in determining the liability of such joint tortfeasors.* To insure the development of a uniform rule of law, and to discourage business dealing in hazardous substances from locating primarily in States with more lenient laws, the bill will encourage the further development of a Federal common law in this area." 126 Cong.Rec. 31,965 (1980) (emphasis added).

Senator Randolph's and Representative Florio's comments are particularly important in light of CERCLA's legislative history. The version of CERCLA finally enacted was drafted by an ad hoc group of Senators after the Senate Committee on Environment and Public Works had reported out its version of S. 1480 with its accompanying report, S.Rep. 96–848, 96th Cong., 2d Sess. (1980). Thus there exists no committee report on the Act ultimately adopted. Moreover, because the House passed the Senate compromise version without amendment, there is no clarifying conference committee report. The Act's only legislative history comes from the House and Senate floor debates. 126 Cong.Rec. 30,930–30,956, 31,964–31,982 (1980).

█ Based on this legislative history, I conclude that Congress intended issues of liability, including joint and several liability and contribution, to be determined under traditional and evolving principles of federal common law. *See United States v. Chem-Dyne,* 572 F.Supp. at 808–810 (hold-

ing that CERCLA mandates development of a uniform federal common law rather than reference to the common law of each state.)

I turn now to a determination of the content of the federal common law of contribution under CERCLA § 107. An appropriate first step is to examine the law of the various states governing contribution among joint tortfeasors. It appears that there is a clear majority state law rule in favor of contribution. While the early common law in the United States prohibited contribution among joint tortfeasors, a right to contribution is now recognized in forty-one states and the District of Columbia. *See Restatement (Second) of Torts* § 886A (1982); *see also Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. at 86–87, 101 S.Ct. at 1577–1579. Of the nine states which follow the no-contribution common law rule, three—Washington, Kansas and New Hampshire—have changed the rule of joint and several liability and have opted for apportioned liability among tortfeasors; there is thus no occasion for enforcing contribution in these states. *Restatement (Second) of Torts* § 886A (1982).

The Restatement (Second) of Torts follows the majority rule. Section 886A provides:

"(1) Except as stated in Subsections (2), (3) and (4), when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them.

(2) The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share. No tortfeasor can be required to make contribution beyond his own equitable share of the liability.

(3) There is no right of contribution in favor of any tortfeasor who has intentionally caused the harm.

(4) When one tortfeasor has a right of indemnity against another, neither of them has a right of contribution against the other."

The leading torts authority, the late Dean Prosser, also recognizes that contribution is an integral component of joint and several liability. Prosser, *Law of Torts* § 50 (4th ed. 1982). Likewise, the Supreme Court has recognized the fairness of contribution and has succinctly articulated the policies underlying the right:

"Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability. Recognition of the right reflects the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability." *Northwest Airlines, Inc.,* 451 U.S. at 87–88, 101 S.Ct. at 1578–79.

Next to be determined is whether the majority trend permitting contribution among tortfeasors is consistent with CERCLA's purpose and scheme. Although there is no statutory provision in CERCLA explicitly *establishing* a right to contribution, § 107(e)(2), 42 U.S.C. § 9607(e)(2), *preserves* claims for contribution. That section provides:

"(2) Nothing in this title, including the provisions of paragraph (1) of this subsection, shall bar a cause of action that an owner or operator or any other person subject to liability under this section, or a guarantor, has or would have, by reason of subrogation or otherwise against any person."

Section 107(e)(2) first appeared in the Senate compromise version of S. 1480 after the drafters deleted § 4(f), the bill's explicit contribution provision, and thereby entrusted liability matters to the common law process of the courts. The source of a right to contribution, if one exists, must be the

federal common law of liability under § 107. Section 107(e)(2) evidences the drafters' view that the common law permits contribution. Certainly, this was the view of the House of Representatives. At the conclusion of his presentation of the Senate compromise bill to the House on December 3, 1980, Representative Florio inserted in the Record an opinion he had requested from the Assistant Attorney General, Office of Legislative Affairs, Department of Justice, regarding the liability provision of S. 1480 as passed by the Senate on November 24, 1980. The opinion cited § 107(e)(2) and concluded:

"This provision, in our view, confirms that a defendant held liable for response costs has the right to seek contribution from any other person responsible for a release or threat of release of a hazardous substance. A right of contribution is only of value to a defendant who has been held jointly and severally liable. This view is entirely consistent with the legislative history of this bill. Senator Randolph addressed this point with the following remarks:

'It is intended that issues of liability not resolved by this act, if any, shall be governed by traditional and evolving principles of common law. An example is joint and several liability. Any reference to these terms has been deleted, and the liability of joint tort feasors will be determined under common or previous statutory law.'

It is the Department's view that common law provides for joint and several liability where the act or omission of two or more persons results in an indivisible injury. It is also our view that where the actions of two or more persons, oth-erwise liable under [the Federal Water Pollution Control Act] combine to cause the release of oil or hazardous substance, those persons are jointly and severally liable for clean-up costs under section 311. In fact, Congress took care to provide a right of contribution among those responsible for a release in subsections (g) and (h) of section 311."[4] 126 Cong. Rec. 31,966 (1980).

CERCLA's primary goal is the expeditious cleanup of hazardous waste sites. Joint and several liability is a powerful tool to achieve that goal. It enables a plaintiff to select one primarily responsible party as the defendant, determine liability as to that defendant, and collect the total amount of damages from that one defendant. If a plaintiff were required to sue all potentially responsible parties (hundreds in this case) in order to ensure a comprehensive cleanup, delays inherent in such massive lawsuits would surely delay cleanup of the site. Once cleanup is assured, however, no goal of CERCLA would be promoted by requiring one of the responsible parties to continue to bear the full cost of injuries caused in part by others. I conclude, therefore, that the majority rule allowing contribution among responsible parties is consistent with CERCLA's statutory purpose and scheme.

A number of courts have held that contribution is available under § 107. In *United States v. Ward*, 22 E.R.C. 1235 (E.D.N.Car. 1984), Judge Britt held that the federal common law defining the scope of § 107 liability permits actions for contribution and indemnity. And in *Reilly Tar Corp. v. Burlington Northern Railroad Co.*, 589 F.Supp. 275, 282 (D.Minn.1984), the court

---

**4.** Courts have recognized a right to contribution under the Federal Water Pollution Control Act ("FWPCA"). *United States v. Bear Marine Services*, 509 F.Supp. 710, 716 (E.D.La.1980), *remanded on other grounds*, 696 F.2d 1117 (5th Cir.1983); *In re the Complaint of Berkley Curtis Bay Co.*, 557 F.Supp. 335, 339 (S.D.N.Y.1983). Section 311(h)(1) of FWPCA, 33 U.S.C. § 1321(h)(1), preserves a right to contribution, although, like CERCLA § 107(e)(2), it is not the source of the right. The source of the right must be, as in CERCLA, the prevailing common law rule permitting contribution among joint tortfeasors. My research has revealed no case expressly articulating the source of the FWPCA's right to contribution. In *In re the Complaint of Berkley Curtis Bay Co.*, for example, the court merely assumed that there is a right to contribution: "Of course, if the government elects to demand reimbursement from either one [liable party or the other] for more than its share of fault, the party that pays for more than its share of fault will have an action for contribution from the party that pays for less than its share of fault."

refused to order inspection of nonparty land under Fed.R.Civ.P. 34(c), holding that the proper procedure was for Reilly Tar to file a third-party complaint against the Railroad, a potentially liable party under § 107 (in *United States v. Reilly Tar*) and then seek inspection. *See also, Wehner v. Syntex Agribusiness, Inc.*, No. 83–642 C (2) (E.D.Mo. April 1, 1985); *United States v. Price*, 20 E.R.C. 2229 (D.N.J. May 31, 1984).

A number of courts have also stated in dicta that contribution is available under § 107: *New York v. Shore Realty Corp.*, 21 E.R.C. 1430, 1432 (E.D.N.Y.1984); *United States v. South Carolina Recycling and Disposal, Inc.*, 20 E.R.C. at 1759–60 n. 8; *United States v. A & F Materials Co.*, 578 F.Supp. at 1261; *United States v. Chem-Dyne Corp.*, 572 F.Supp. at 807 n. 3; *United States v. Northeastern Pharmaceutical and Chemical Co.*, 579 F.Supp. at 845 n. 26. *See also* Note, "The Right to Contribution for Response Costs Under CERCLA," 60 Notre Dame L.Rev. 345 (1985).

■ Only one court has held, or even stated obiter dictum, that there is no right to contribution under CERCLA. *United States v. Westinghouse Electric Corp.*, 22 E.R.C. 1230, 1234 (S.D.Ind.1983). But *Westinghouse* may be distinguished on its facts. In that case, defendant Westinghouse sought to file a third-party complaint against Monsanto Company. It does not appear that Monsanto, the manufacturer of the hazardous substance PCB, was a responsible party under § 106 or § 107. It is settled law that contribution is only available where joint liability can be imposed.

■ To the extent that the *Westinghouse* opinion can be construed as stating that contribution is never available under CERCLA, I respectfully disagree. The court in *Westinghouse* cited *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (in which the Supreme Court had held that there is no right to contribution under the Sherman and Clayton Acts), and *Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 101 S.Ct.

1571, 67 L.Ed.2d 750 (1981) (in which the Supreme Court had held that there is no right to contribution under the Equal Pay Act and Title VII), and then concluded that federal courts have repeatedly refused to expand the remedy of contribution being sought by Westinghouse.

In my view *Westinghouse* erred in applying to CEPCLA the standards articulated in *Texas Industries* and *Northwest Airlines*. Although Congress did not empower the federal courts to develop a common law of contribution under the antitrust laws, the Equal Pay Act and Title VII, it is clear, as discussed at length above, that Congress did empower the federal courts to develop a federal common law of liability under CERCLA § 107. Moreover, Congress, in § 107(e)(2), explicitly declared its intent to preserve actions for contribution to the extent that the common law provides a right to such actions.

I conclude, therefore, that defendants ASARCO, Inc., Resurrection Mining Company, and the Res-ASARCO Joint Venture will have a right to contribution in the event that they are held jointly and severally liable for the damages alleged by the State of Colorado.

The issue then arises whether the third-party claims should be tried with the primary claims in one trial, or whether the third-party claims should be bifurcated or severed for separate discovery and trial after the defendants' liability to the State of Colorado has been determined. The State of Colorado, not surprisingly, has moved for separate trials. Proceeding against several hundred parties poses difficulties, even with modern case management techniques, not presented in proceeding against three defendants. Procedural implementation of the defendants' right to contribution must be consistent with CERCLA's purpose—prompt cleanup of hazardous waste sites. The parties shall report to this court by May 13, 1985 regarding a suggested procedure for litigation of the third-party claims, including whether the third-party defendants should be certified as a class and whether separate

discovery, pretrial and trial schedules should be ordered.

Accordingly,

IT IS ORDERED that the third-party defendants' motion to dismiss the third-party claims on the ground that there is no right to contribution under CERCLA is denied.