UNITED STATES of America, Plaintiff,

v.

Dale VALENTINE, et al., Defendants.

No. 93CV1005J.

United States District Court,
D. Wyoming.

June 2, 1994.

David Freudenthal, U.S. Atty., Cheyenne, WY, David Kubichek, Asst. U.S. Atty., Casper, WY, Myles Flint, Anna Thode, Drenaye Houston, Sarah Himmelhoch, David Askman, Dept. of Justice, Washington, DC, Linda Kato, E.P.A., Denver, CO, and Michael Nor-thridge, E.P.A., Washington, DC, for plaintiff.

James W. Owens, James R. Bell, Murane & Bostwick, Jon B. Huss, Brown & Drew, Casper, WY, Carl L. Lathrop, J. Kent Rutledge, Lathrop & Rutledge, Glenn E. Smith, Glenn E. Smith & Associates, Steven F. Freudenthal, Herschler, Freudenthal, Salzburg, Bonds & Rideout, Cheyenne, WY, John R. Vincent, Vincent & Vincent, Riverton, WY, Tom C. Toner, Yonkee & Toner, Sheridan, WY, David A. Bailey, William J. Duffy, Parcel, Mauro, Hultin & Spaanstra, Denver, CO, J.N. Murdock, Mark W. Gifford, Reeves, Murdock & Gifford, Casper, WY, Christopher J. Dodson, George A. Phair, Conoco, Inc., Houston, TX, John D. McCarthy, John L. Watson, Holme, Roberts & Owen, Denver, CO, Manuel A. Lojo, True Oil Co., Casper, WY, H.W. Rasmussen, Badley & Rasmussen, Sheridan, WY, William M. McKellar, Boley & McKellar, Cheyenne, WY, Don Jemison, Elaine M. Allan, Phillips Petroleum Co., Inc., Bartlesville, OK, Edward W. Harris, Lynnette J. Boomgaarden, Holland & Hart, Cheyenne, WY, Anthony L. Joseph, Holland & Hart, and Chris A. Mattison, and James W. Britt, Hall & Evans, Denver, CO, for defendants.

William Valentine and Sons, Inc., Dale Valentine, pro se.

## ORDER ON MOTION OF DEFENDANTS CONOCO PIPELINE COMPANY, EIGHTY–EIGHT OIL COMPANY, TRUE OIL COMPANY, PHILLIPS PETROLEUM COMPANY AND TEXACO REFINING AND MARKETING, INC. FOR LEAVE TO FILE CROSS CLAIMS AND THIRD PARTY COMPLAINTS

ALAN B. JOHNSON, Chief Judge.

This matter comes before the Court on the motion of defendants Conoco Pipeline Company, Eighty–Eight Oil Company, True Oil Company, Phillips Petroleum Company and Texaco Refining and Marketing Inc. (the "Settling Defendants") for leave to file cross claims and third party complaints. A hearing was held on the motion on May 31, 1994. The Court, having considered the materials filed both in support of and in opposition to the motion, the arguments of counsel, and

being fully advised in the premises, now OR-DERS as follows:

### Background

This litigation concerns the Powder River Crude Processors facility (the "Site"), located approximately six miles west of Glenrock, Wyoming. The thirty-two acre Site received petroleum material that was below pipeline standards. The Site was constructed to process oil received into pipeline quality crude. The Site consists primarily of above-ground steel tanks, underground concrete tanks and surface impoundment areas.

This case was initiated on February 19, 1993, when the United States of America filed a complaint pursuant to Section 7003 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6973. Section 7003 of RCRA allows the United States to bring suit against "any person;" including any past or present generator, transporter, or owner or operator of a solid or hazardous waste treatment, storage or disposal facility who has contributed or is contributing to handling, storage, treatment, transportation or disposal which may present an "imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6973(a). The complaint seeks (1) an injunction requiring an investigation and cleanup of the Site, (2) compliance with Administrative Orders issued by the EPA against certain of the defendants and (3) civil penalties for violations of the Administrative Orders.

The complaint named ten defendants: Conoco Pipe Line Company ("Conoco"), Texaco Marketing and Refining Inc. ("Texaco"), Phillips Petroleum Company ("Phillips"), True Oil Company ("True"), Eighty–Eight Oil Company ("Eighty–Eight"), Jim's Water Service, Inc. ("JWS"), Valentine Construction Co., Inc., Dale Valentine, William Valentine and Sons, Inc. ("Valentine Defendants"), and Richard Wallace ("Wallace"). These defendants fall into three categories as follows: owner/operators of the Site; transporters of oil to the Site; and generators, or those entities that were sources of oil.

On March 4, 1994, the United States lodged a proposed Consent Decree, which led to the settlement of this lawsuit with respect to the five generator defendants—Conoco, Eighty–Eight, True, Phillips and Texaco ("Settling Defendants"). The Consent Decree, as approved by this Court, requires the Settling Defendants jointly and severally, to finance and conduct a cleanup of the Site at an estimated cost of \$4.4–\$8.9 million.[1] Thus, under the terms and conditions of the Consent Decree, work performed by the Settling Defendants will result in the removal and treatment of wastes originating with or handled by persons not party to the Decree.

Because the Settling Defendants must now fulfill cleanup obligations for which Non-settling Defendants and certain third parties are also responsible, the Settling Defendants have requested leave to file cross claims and third-party complaints against those parties, under theories of contribution and indemnification. In the context of this litigation, if Settling Defendants' motion for leave is granted, the Settling Defendants will recover only that appropriate share of cleanup costs attributable to responsible Non–Settling Defendants and third parties. Conversely, if the Settling Defendants' motion for leave is denied, Settling Defendants assume the entire cleanup cost, but will have no recourse to recover any portion of those costs attributable to Non–Settling Defendants or third parties who contributed to contamination of the Site, and who otherwise are liable to the government for remediation of the Site. In other words, denial of the motion will effectively immunize the Non–Settling Defendants and other responsible parties (who may have generated from fifty to ninety percent of the materials to be processed) from any liability for cleanup costs.[2]

Non–Settling Defendant JWS opposes the Settling Defendants' motion for leave to file cross claims and third-party complaints, as-

1. In addition, the Settling Defendants must pay a \$300,000 civil penalty.

2. Such Non–Settling Defendants and other parties could still be held liable for civil penalties

and additional injunctive relief that is being sought by the Plaintiff.

serting that neither RCRA nor federal common law supports a right to contribution.

### Standard of Review

■ Pursuant to Rule 15(a), Fed.R.Civ.P., the Settling Defendants seek leave to amend to assert cross-claims against the Non–Settling Defendants. *See* Fed.R.Civ.P. 13(g) (authorizing cross-claims against coparties). Such "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, leave to amend should be denied if the amended pleading would fail to state a claim as a matter of law. *Ocasek v. Hegglund*, 673 F.Supp. 1084 (D.Wyo.1987).

Pursuant to Rule 14(a), Fed.R.Civ.P., the Settling Defendants also seek leave to file Third Party Complaints. Under that rule, a Third Party Complaint is proper where the proposed third party defendant "is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed.R.Civ.P. 14(a). "As the rule is designed to reduce multiplicity of litigation and therefore is remedial in character, it should be construed liberally." *Lambert v. Inryco, Inc.*, 569 F.Supp. 908, 911 (W.D.Okla.1980).

### Discussion

The Settling Defendants' motion requires the Court to determine whether there is a right to contribution in actions brought under RCRA § 7003(a), 42 U.S.C. § 6973(a) (Cum. Supp.1993). As one court has observed, "[t]he doctrine of contribution is deeply rooted in the principles of equity, fair play and justice." *Aalco Manufacturing Co. v. City of Espanola*, 95 N.M. 66, 618 P.2d 1230, 1232 (1980); *accord Panichella v. Pennsylvania Railroad Co.*, 167 F.Supp. 345, 352 (W.D.Pa. 1958); *Travelers Indemnity Co. v. Trowbridge*, 41 Ohio St.2d 11, 321 N.E.2d 787, 789 (1975); *Hudgins v. Jones*, 205 Va. 495, 138 S.E.2d 16, 21 (1964). "Likewise, the [United States] Supreme Court has recognized the fairness of contribution and has succinctly articulated the policies underlying the right:

'Typically, a right to contribution is recognized when two or more persons are liable to the same plaintiff for the same injury and one of the joint tortfeasors has paid more than his fair share of the common liability. Recognition of the right reflects the view that when two or more persons share responsibility for a wrong, it is inequitable to require one to pay the entire cost of reparation, and it is sound policy to deter all wrongdoers by reducing the likelihood that any will entirely escape liability.' "

*State of Colorado v. ASARCO, Inc.*, 608 F.Supp. 1484, 1490 (D.Colo.1985) (quoting *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 87–88, 101 S.Ct. 1571, 1578–79, 67 L.Ed.2d 750 (1981)).

■ JWS contends that this Court should deny any right to contribution under Section 7003. However, while JWS correctly points out that the statute does not expressly grant such a right, that omission is not dispositive. *Northwest Airlines*, 451 U.S. at 91, 101 S.Ct. at 1580. Instead, a right to contribution may also arise from a federal statute "by clear implication" or "through the power of federal courts to fashion a federal common law of contribution." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 638, 101 S.Ct. 2061, 2065–66, 68 L.Ed.2d 500 (1981); *accord Northwest Airlines*, 451 U.S. at 90, 101 S.Ct. at 1580.

■ In determining whether a contribution right exists by implication, this Court must liberally construe Section 7003. *United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1383 (8th Cir.1989) ("RCRA is a remedial statute, which must be liberally construed"). The Court must also focus on congressional intent, which may be discerned from, among other things, the statutory language, the legislative history and the overall legislative scheme. *Texas Industries*, 451 U.S. at 639, 101 S.Ct. at 2066; *Northwest Airlines*, 451 U.S. at 94, 101 S.Ct. at 1582. If the language and history of a statute provide little guidance, courts may still infer a right to contribution where doing so would be consistent with express contribution rights granted under analogous laws and would not frustrate the purpose of the statute in question. *See Musick, Peeler & Garrett v. Employers Insurance of Wausau*, 508

U.S. ——, ——, 113 S.Ct. 2085, 2089–90, 124 L.Ed.2d 194, 203–05 (1993) (recognizing right to contribution in actions under Rule 10b–5 of the Securities and Exchange Act).

 Courts may formulate federal common law where either "a federal rule of decision is 'necessary to protect uniquely federal interests'" or "Congress has given the courts the power to develop substantive law." *Texas Industries*, 451 U.S. at 640, 101 S.Ct. at 2067 (quoting *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 426, 84 S.Ct. 923, 939, 11 L.Ed.2d 804 (1964)). Thus, if a statute, its legislative history or the overall regulatory scheme "suggest that Congress intended courts to have the power to alter or supplement the remedies enacted," (*id.*, 451 U.S. at 645, 101 S.Ct. at 2069), courts are empowered to recognize a federal common law right to contribution. *See, e.g., Sand Springs Home v. Interplastic Corp.*, 670 F.Supp. 913, 916–17 (N.D.Okla.1987) (holding that defendants have federal common law contribution rights under the Comprehensive Environmental Response, Compensation and Liability Act as it existed prior to the express provisions for contribution added by the Superfund Amendments and Reauthorization Act of 1986 ("SARA")); *United States v. New Castle County*, 642 F.Supp. 1258, 1268–69 (D.Del.1986) (same); *ASARCO*, 608 F.Supp. at 1489 (same).

 Applying those principles, the Court concludes that defendants have a right to contribution in actions brought under Section 7003.[3] That statute grants the Court broad authority to fashion whatever equitable remedies are necessary to ensure the protection of the public health and environment. While sparse, the statute's legislative history confirms this broad grant of authority. Moreover, recognizing a right to contribution would comport with the purpose of the statute and serve the unique federal interest in the expeditious settlement of RCRA actions. Therefore, a right to contribution is both implicit in Section 7003 and must be recognized as a matter of federal common law.

### A. A Right to Contribution Arises From Section 7003 by Clear Implication.

The Settling Defendants seek to obtain contribution pursuant to Section 7003(a), which provides, in pertinent part, as follows:

Notwithstanding any other provision of this chapter, upon receipt of evidence that the past or present handling, storage, treatment, transportation or disposal of any solid waste or hazardous waste may present an imminent and substantial endangerment to health or the environment, the Administrator may bring suit on behalf of the United States in the appropriate district court against any person (including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility) who has contributed or who is contributing to such handling, storage, treatment, transportation or disposal to restrain such person from such handling, storage, treatment, transportation, or disposal, *to order such person to take such other action as may be necessary*, or both.

42 U.S.C. § 6973(a) (emphasis added).

Several courts have recognized the sweeping nature of the authority conferred by Section 7003. *See, e.g., United States v. Aceto Agricultural Chemicals Corp.*, 872 F.2d 1373, 1383 (8th Cir.1989); *United States v. Price*, 688 F.2d 204, 211, 213–14 (3d Cir.1982); *Middlesex County Board of Chosen Freeholders v. State of New Jersey*, 645 F.Supp. 715, 722 (D.N.J.1986); *United States v. Conservation Chemical Co.*, 619 F.Supp. 162, 199 (W.D.Mo.1985). In *Conservation Chemical*, for example, the court held that the statute gives "broad authority to the courts to grant all relief necessary to ensure complete pro-

---

**3.** The Settling Defendants' proposed pleadings request both contribution and indemnity from the cross-claim and third-party defendants. For the same reasons the Court holds that a right to contribution exists under RCRA, the Court also recognizes a right to indemnity, but acknowledges that they are mutually exclusive remedies.

*See* Restatement (Second) of Torts § 886A cmt. a (1965) and *Schneider National Inc. v. Holland Hitch Co.*, 843 P.2d 561 (Wyo.1992). The Court expresses no opinion as to the precise form either contribution or indemnity may take in this case.

tection of the public health and the environment." *Conservation Chemical*, 619 F.Supp. at 199; *accord Aceto Agricultural Chemicals*, 872 F.2d at 1383.

Similarly, the Third Circuit Court of Appeals has held that the statute grants "overriding authority"[4] to the federal courts, and further described that authority as follows:

> The unequivocal statutory language and ... legislative history make it clear that Congress, by enacting section 7003, intended to confer upon courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risks posed by toxic wastes.

> \* \* \* \* \* \*

> Congress, in the endangerment provisions of RCRA ... sought to invoke nothing less than the full equity powers of the federal courts in the effort to protect public health, the environment, and public water supplies from the pernicious effects of toxic wastes. Courts should not undermine the will of Congress by either withholding relief or granting it grudgingly.

*Price*, 688 F.2d at 214 (emphasis added).

Significantly, a Senate report on the 1984 amendments to RCRA quotes the underlined passage from *Price* with approval. *Conservation Chemical*, 619 F.Supp. at 201 (citing S.Rep. No. 284, 98th Cong., 1st Sess., at 59). Another portion of the legislative history also supports a broad reading of the statute:

> [S]ection 7003 is essentially a codification of common law public nuisance remedies ... [and], therefore, incorporates the legal theories used for centuries to assess liability for creating a public nuisance (including intentional tort, negligence, and strict liability) and to determine appropriate remedies.....

**4.** *Price*, 688 F.2d at 213 (quoting H.R. Committee Print No. 96–IFC 31, 96th Cong., 1st Sess. at 32 (1979)).

**5.** RCRA 7003 was enacted in 1976. However, "[t]he legislative history of [RCRA] as originally enacted contains no specific discussion of the reach of section 7003 and no mention of the reasons for its insertion." *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 738 (8th Cir.1986). Consequently, courts have typically relied on the legislative history of

S.Rep. No. 96–172, 96th Cong., 1st Sess., at 5, *reprinted in* [1980] U.S.Code Cong. & Ad.News 5019, 5023;[5] *see also Conservation Chemical*, 619 F.Supp. at 199; *Jones v. Inmont Corp.*, 584 F.Supp. 1425, 1437 (S.D. Ohio 1984).

It is plain, therefore, that Section 7003 empowers the Court to grant the full range of equitable remedies and also all remedies traditionally provided under the common law of nuisance, at least so long as such relief serves to protect the public health and environment. *See Conservation Chemical*, 619 F.Supp. at 199. Accordingly, courts have awarded the equitable remedy of restitution in cases brought under Section 7003. *United States v. Northeastern Pharmaceutical & Chemical Co.*, 810 F.2d 726, 749 (8th Cir. 1986), *cert. denied*, 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987); *Price*, 688 F.2d at 214; *Conservation Chemical*, 619 F.Supp. at 201 (holding government can recover response costs *as restitution*). Like restitution, contribution is an equitable remedy designed to prevent unjust enrichment,[6] and there is no legitimate reason for courts to grant the former remedy and yet deny the latter.

Similarly, courts have relied on the common law of nuisance to impose joint and several liability in Section 7003 cases. *See, e.g., Conservation Chemical*, 619 F.Supp. at 199. The *Conservation Chemical* court reasoned as follows:

> Since Congress intended Section 7003 to be both a codification and expansion of the common law of public nuisance, Congress must also have intended for joint and several liability to be applied where the injury is indivisible. As this Court has recognized, joint and several liability is the evolving, modern rule applied in environ-

the 1980 and 1984 amendments to RCRA, which did not alter section 7003 in any way relevant to the contribution issue, in interpreting section 7003. *Id.; Conservation Chemical*, 619 F.Supp. at 201.

**6.** *See Northwest Airlines*, 451 U.S. at 87–88, 101 S.Ct. at 1578–79; Restatement (Second) of Torts § 886A(2) and cmt. c (1965); Restatement of Restitution § 1 (1937).

mental cases where the injury is indivisible. It is proper to assume that Congress was aware of these common law decisions and intended for joint and several liability to be applied in like cases.

*Conservation Chemical,* 619 F.Supp. at 199 (citations omitted); *see also Cannon v. University of Chicago,* 441 U.S. 677, 696–97, 99 S.Ct. 1946, 1957–58, 60 L.Ed.2d 560 (1979).

■ Like joint and several liability, contribution is part of the common law of nuisance. *See* Restatement (Second) of Torts § 886A cmt. b (1965). The modern trend also favors the recognition of a right to contribution. *See Texas Industries,* 451 U.S. at 634, 101 S.Ct. at 2063–64; *Northwest Airlines,* 451 U.S. at 87, 101 S.Ct. at 1578–79; *ASARCO,* 608 F.Supp. at 1490; Restatement (Second) of Torts § 886A cmt. a (1965). Consequently, for the same reasons joint and several liability must be imposed under Section 7003, a right to contribution must be granted under that statute as well.

Indeed, a right to "contribution is an integral component of joint and several liability". *ASARCO,* 608 F.Supp. at 1490. *County Line Investments Co. v. Tinney,* 933 F.2d 1508, 1515–16 (10th Cir.1991). Therefore, contribution must be recognized precisely because joint and several liability is the rule in RCRA cases. *Conservation Chemical,* 619 F.Supp. at 228. As the *Conservation Chemical* court stated under similar circumstances:

Because Congress has largely left the judiciary with the responsibility for fashioning rules of joint and several liability and remedies resulting therefrom, the federal judiciary has no choice but to accept its charge by fashioning a federal remedy of contribution in CERCLA cases, as it has done in similar circumstances under other statutes. *See, United States v. Bear Marine Services, Inc.,* 509 F.Supp. 710, 716 (E.D.La.1980), *remanded on other grounds,* 696 F.2d 1117 (5th Cir.1983) (Federal Water Pollution Control Act) ... *In re Berkley Curtis Bay Co.,* 557 F.Supp.

335, 339 (S.D.N.Y.1983) (Federal Water Pollution Control Act).

*Id.*

Further, granting a right to contribution will serve the purposes underlying Section 7003. *See Aceto Agricultural Chemicals,* 872 F.2d at 1383. Contribution will encourage early settlements between defendants and the government by granting defendants an opportunity to litigate the liability of other parties and possibly recoup their settlement payments at a later date. *See New Castle County,* 642 F.Supp. at 1269. Without contribution, defendants either will be forced to bear the full cost of cleanup despite the existence of other responsible parties or will be deterred from settling until after the share of every potentially responsible party has been litigated. *Cf. Polger v. Republic National Bank,* 709 F.Supp. 204, 209 (D.Colo.1989) ("If ... owners believe that they will not be allowed to recover from others who actually generated or dumped the waste, they may decide to ignore a hazardous waste site in the hope that federal or state authorities will either not discover the waste, or will be unsuccessful in pinning liability on them.").

■ If there were no settlement, and the liability of all parties, including third parties, were fully litigated, the Court would expressly have authority to order the responsible parties to fund a cleanup of the Site and apportion responsibility for the costs among the parties.[7] 42 U.S.C. § 6973 (Cum.Supp. 1993) (authorizing courts to order defendants to take such action as may be necessary to eliminate an imminent and substantial endangerment). Compelling contribution by responsible Non–Settling Defendants and any other responsible parties does not alter the Court's powers to apportion the responsibilities for the cleanup costs and subjects those parties to no greater financial liability. Allowing a contribution remedy, moreover, has the significant advantage of facilitating and encouraging early settlements of RCRA

---

7. The allocation of responsibility for costs would not alter the joint and several responsibility imposed by RCRA. For example, in implementing the cleanup, one responsible party can be required to perform the entire cleanup, though that performing party, in turn, may require payment by the other parties for costs. In that event, the performing party may ask the Court to use, its contempt powers to enforce the apportionment.

cases and expeditious cleanups of those sites. Thus, permitting the Settling Defendants to pursue their contribution claims is consistent with the legislative purpose in enacting Section 7003. *Aceto Agricultural Chemicals,* 872 F.2d at 1383; *cf. ASARCO,* 608 F.Supp. at 1491 (once cleanup is assured, no statutory goal would be promoted by forcing only some of the responsible parties to bear cleanup costs).

 Finally, as the Third Circuit Court has observed, "[a] court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in the particular case." *Price,* 688 F.2d at 211. If the Court adopts the narrow reading of the statute urged by JWS, the Settling Defendants, who have stepped forward to pay cleanup costs, will be denied any recourse against the Non–Settling Defendants and other potentially liable parties who have refused to do so. Stated the other way, denying contribution will immunize the Non-settling Defendants and the other parties from any costs of the clean-up despite their possible liability in this case.

This is not a case in which equity is reluctant to intervene because the Settling Defendants are accused of some misconduct and seek to obtain contribution from parties with whom they are *in pari delicto. Cf. Texas Industries,* 451 U.S. at 635, 101 S.Ct. at 2064. Rather, this is a case in which the Settling Defendants are charged with strict liability under Section 7003. *See Aceto Agricultural Chemicals,* 872 F.2d at 1377; *Northeastern Pharmaceutical,* 810 F.2d at 740. Thus, there is no just cause for penalizing the Settling Defendants for their consent to pay cleanup costs, by requiring them "to bear the full cost of injuries caused in part by others." *ASARCO,* 608 F.Supp. at 1491. Likewise, justice would be disserved by rewarding the Non–Settling Defendants and other parties for refusing to contribute to cleanup costs. Based on its power to do justice, which is plainly invoked by Section 7003, the Court affirms the Settling Defendants' right to seek contribution in this case.

B. *A Right to Contribution Exists Under the Federal Common Law.*

The Court also concludes that a right to contribution exists as a matter of federal common law. As noted above, the Court can formulate federal common law where it is necessary to protect "uniquely federal interests" or where Congress has authorized the Court to develop substantive law. *Texas Industries,* 451 U.S. at 640, 101 S.Ct. at 2066–67. In applying that test, the Court is guided by cases finding a federal common law contribution right under an analogous hazardous waste statute, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA").[8] *See Sand Springs Home v. Interplastic Corp.,* 670 F.Supp. 913, 916–17 (N.D.Okla.1987); *United States v. New Castle County,* 642 F.Supp. 1258, 1268–69 (D.Del.1986); *State of Colorado v. ASARCO,* 608 F.Supp. 1484, 1492 (D.Colo.1985).

In *New Castle County,* for example, the court exhaustively reviewed CERCLA's legislative history and concluded "that Congress did intend that the courts develop a substantive law of CERCLA contribution as a matter of federal common law." *New Castle County,* 642 F.Supp. at 1268; *accord Sand Springs Home,* 670 F.Supp. at 916; *ASARCO,* 608 F.Supp. at 1489. The court also held that the application of federal common law would enhance unique federal interests, reasoning as follows:

> [T]he Federal Government is authorized by CERCLA to take action against responsible persons to achieve compliance with the goals of the Act. A right to contribution would encourage expeditious settlement of Superfund suits brought by the Government against these responsible persons. Because CERCLA liability is joint/several, the Government needs to sue only a limited number of responsible parties in order to recover all costs of cleanup and remedial operations at a site. With a right to contribution available to CERCLA defendants, they will be willing to under-

---

**8.** After these cases were decided, Congress "ratified" the right to contribution by amending CERCLA to expressly recognize a right of contri- bution. *Tinney,* 933 F.2d at 1516. *See* 42 U.S.C. § 9613(f) (Supp.1994).

take the burden to locate and implead other responsible persons into a CERCLA action in order to minimize their own liability. As the size of the defendant pool increases, the chances for settlement of the suit and achievement of one of the federal government's objectives under the Act—site cleanup at the expense of responsible parties—is met. *In addition, a right to contribution, through its ability to encourage settlement, will cause a substantial reduction in the Government's CERCLA enforcement costs by eliminating the need for expensive and drawn out litigation.*

*New Castle County,* 642 F.Supp. at 1268–69 (emphasis added); *accord Sand Springs Home,* 670 F.Supp. at 916.

The same reasoning applies to RCRA. Both the language of Section 7003 and that provision's legislative history confirm that Congress "intended to confer upon courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risks posed by toxic wastes." *Price,* 688 F.2d at 213–14. Indeed, Congress has expressly approved that judicial interpretation of Section 7003. *See Conservation Chemical,* 619 F.Supp. at 201 (citing S.Rep. No. 284, 98th Cong., 1st Sess., at 59). As discussed above, contribution qualifies as a form of "affirmative equitable relief" that would help "to eliminate [the] risks posed by toxic wastes." *Price,* 688 F.2d at 213–14. Therefore, Congress has plainly authorized the Court to recognize a federal common law right to contribution in actions brought under RCRA.

Further, contribution would serve the same unique federal interests under RCRA that were served by a federal common law right to contribution under CERCLA. By encouraging defendants to do the work necessary to locate and implead other potentially responsible parties, and making early settlements of RCRA suits possible, contribution will both preserve the public treasury and produce faster cleanups of those sites. *New Castle County,* 642 F.Supp. at 1269. Consequently, a right to contribution in RCRA suits can and should be recognized as a matter of federal common law.

## C. Recent United States Supreme Court Precedent Supports the Recognition of a Right to Contribution in This Case.

In *Musick, Peeler & Garrett v. Employers Insurance of Wausau,* 508 U.S. ——, 113 S.Ct. 2085, 124 L.Ed.2d 194 (1993), the Supreme Court considered whether a right to contribution exists in securities cases brought under Rule 10b–5, § 10(b) of the Securities Exchange Act of 1934. At the outset, the Court noted that Congress had left the development of the Rule 10b–5 cause of action to the judiciary. *Musick, Peeler & Garrett,* 508 U.S. at ——, 113 S.Ct. at 2089, 124 L.Ed.2d at 202. The Court further stated as follows:

The text of § 10(b) provides little guidance where we are asked to specify elements or aspects of the 10b–5 apparatus unique to a private liability arrangement, including a ... right to contribution. Having made no attempt to define the precise contours of the private cause of action under § 10(b), Congress had no occasion to address how to limit, compute or allocate liability arising from it.

*Id.,* 508 U.S. at ——, 113 S.Ct. at 2090, 124 L.Ed.2d at 203 (citations omitted).

In the absence of such guidance from Congress, the Court sought "to ensure the [10b–5] action does not conflict with Congress' own express rights of action, to promote clarity, consistency and coherence for those who rely upon or are subject to 10b–5 liability, and to effect Congress' objectives in enacting the securities laws." *Id.* (citations omitted). After observing that sections 9 and 18, two analogous express liability provisions of the 1934 Act, expressly created contribution rights, the Court concluded "that consistency requires us to adopt a like contribution rule for the right of action existing under Rule 10b–5." *Id.,* 508 U.S. at ——, 113 S.Ct. at 2091, 124 L.Ed.2d at 204. Accordingly, since there had been no showing that contribution would frustrate either the purpose of section 10(b) or the overall structure of the 1934 Act, the Court held that there is a right to contribution in 10b–5 cases. *Id.,* 508 U.S. at ——, 113 S.Ct. at 2090–91, 124 L.Ed.2d at 204–05.

Recognizing a right to contribution under Section 7003 of RCRA is fully consistent with

*Musick, Peeler & Garrett,* the Supreme Court's most recent decision on contribution. Like section 10 of the Exchange Act of 1934, Section 7003 leaves the courts the task of determining exactly which equitable remedies will be available under the statute. Further, an analogous hazardous waste statute, CERCLA, expressly grants a right to contribution, and coherence and consistency demand that the Court exercise its authority to grant that equitable remedy in RCRA actions as well. *See* 42 U.S.C. § 9613(f) (Supp. 1994). Finally, recognizing a right to contribution under RCRA will advance, rather than frustrate, the purposes of the statute. *Cf. New Castle County,* 642 F.Supp. at 1268–69.

This case is also readily distinguishable from two previous Supreme Court decisions denying rights to contribution under federal law. *See Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (holding no right to contribution exists in antitrust actions); *Northwest Airlines, Inc. v. Transport Workers Union of America,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (holding no contribution right exists under the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964). Unlike *Texas Industries* and *Northwest Airlines,* this case does not involve a statute with "detailed and specific" remedial provisions[9] or a "comprehensive ... remedial scheme expressly fashioned by Congress [that] strongly evidences an intent not to authorize additional remedies."[10] To the contrary, this case involves a statute that mentions only one specific remedy, injunctions, and clearly authorizes the federal courts to fashion supplemental equitable remedies. *Price,* 688 F.2d at 214. Also unlike *Texas Industries* and *Northwest Air-*

*lines,* the federal government is a party in this case, and contribution will serve the strong federal interests in conserving federal funds and quickly eliminating imminent and substantial endangerments to the public health or the environment. *New Castle County,* 642 F.Supp. at 1268–69. In short, this case is governed by *Musick, Peeler & Garrett,* which supplements the two earlier decisions, and the Court holds that there is a right to contribution in actions under Section 7003.[11]

### Conclusion

For the reasons fully stated above,

IT IS ORDERED that the Settling Defendants' motion for leave to file cross claims and third party complaints is granted.

---

**9.** *Texas Industries,* 451 U.S. at 644, 101 S.Ct. at 2068–69.

**10.** *Northwest Airlines,* 451 U.S. at 93–94, 101 S.Ct. at 1581–82.

**11.** JWS has cited *United States v. Production Plated Plastics, Inc.,* 21 E.L.R. 21220, 1991 WL 257083 (W.D.Mich.1991) in support of its claim that no such contribution right exists. However, *Production Plated Plastics* was decided under a different RCRA provision, 42 U.S.C. § 6972. Consequently, the court in that case did not

review Section 7003, its legislative history or the decisions recognizing the sweeping nature of the authority it grants to federal courts. Moreover, *Production Plated Plastics* was decided prior to the Supreme Court decision in *Musick, Peeler & Garrett,* which undercuts the district court's reasoning. Finally, *Production Plated Plastics* does not discuss the highly significant development of a federal common law of contribution under CERCLA. Therefore, to the extent *Production Plated Plastics* suggests that no contribution right exists under Section 7003, the Court respectfully declines to follow that decision.