Henry DAVENPORT and Davenport R.V., Inc., Plaintiffs,

v.

Thomas Ross NEELY, Jr., et al., Defendants.

No. CIV. A. 97–D–1019–N.

United States District Court, M.D. Alabama, Northern Division.

May 29, 1998.

Susan S. DePaola, Montgomery, AL, for Plaintiffs.

Walter R. Byars, Alvin L. Fox, Jr., Montgomery, AL, for Defendants.

## ORDER

DE MENT, District Judge.

Before the court is Defendants' "Motion For Leave To File Third–Party Complaint" ("Defs.' Mot.") filed October 27, 1997. Plaintiffs filed a Response ("Pls.' Resp.") on November 12, 1997, to which Defendants filed a reply ("Defs.' Reply") on November 24, 1997. On December 15, 1997, the court directed the Parties to file further pleadings regarding the propriety of Defendants' proposed third-party complaint. Defendants filed their Supplemental Pleading ("Defs.' Supp.") on January 20, 1998. Plaintiffs filed their Responsive Submission ("Pls.' Supp.") on the same date.

Defendants' proposed third-party complaint is a quintessential "shotgun" pleading, casting vague assertions at a wide variety of parties in an attempt to deflect potential liability. *See Ebrahimi v. City of Huntsville Board of Education,* 114 F.3d 162, 165 (11th Cir.1997) (trial) ("Experience teaches that when district courts abdicate [their] responsibility [to narrow and define the issues at the earliest stages of the litigation], 'issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.' " (citation omitted)); *see also Morro v. City of Birmingham,* 117 F.3d 508, 515 (11th Cir.1997).

For the reasons set forth below, the court finds that Defendants' Motion For Leave To File Third–Party Complaint is due to be granted in part and denied in part.

## I. Factual And Procedural Summary

Plaintiffs sued Thomas Ross Neely, Jr., ("Neely") in his individual capacity, and as owner and/or operator of a facility located at 3370 Birmingham Highway, Montgomery, Alabama, ("Facility") and Neely, Margaret Ann Cundiff Neely, Thomas Ross Neely, III, and Margaret Carol Neely Miller in their capacities as Trustees of the Thomas Ross Neely, Jr. Revocable Trust, which Plaintiffs contend is the owner and/or operator of the Facility.

Plaintiffs contend that the Facility is "being used at the present time as an unpermitted solid waste landfill and/or open dump. This facility consists of approximately eight acres of open land upon which are deposited hundreds of thousands of discarded tires." (Pls.' First Am. Compl. ¶ 10.) According to the Plaintiffs, "[t]he unauthorized dump came into existence as a result of the defendants' decision to allow various tenants beginning in 1992 to attempt to operate a tire recycling facility on the premises without adequate monitoring and/or control over the operation of the facility." (*Id.* at ¶ 11.) The tenants have abandoned the premises with a huge stockpile of tires remaining. (*Id.* at ¶ 13.)

Plaintiffs contend that "[a]t all times material hereto, the defendants had knowledge of the problems with the operation(s) of the facility by their tenants and failed to take any action to stop the disposal of used tires on site and/or to require the immediate clean up of the facility." (*Id.* at ¶ 12.) Plaintiffs contend that the Defendants "do not have a permit to operate the facility as a solid waste disposal facility," that the Facility is an "unpermitted open dump" in violation of state and federal law, (*Id.* at ¶ 13), and that "defendants have ignored warnings by various state officials regarding usage of the premises and allowed the continued growth of this unpermitted facility." (*Id.* at ¶ 15.)

Plaintiffs assert that the Facility is immediately adjacent to Davenport R.V., Inc., that it poses a health and welfare risk to Henry Davenport personally, and "has caused an interference with the use and occupation of the land by the corporate plaintiff including a loss of business and a continuing fire hazard associated with the facility." (*Id.* at ¶ 17.)

Plaintiffs' First Amended Complaint is brought pursuant to the citizens suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a), as well as 42 U.S.C. § 6945 and various state laws. Count I is brought pursuant to 42 U.S.C. § 6972(a)(1)(A) and 42 U.S.C. § 6945. Plaintiffs state that "the Defendants' conduct ... is in violation of permits, standards, regulations, conditions, requirements, prohibitions or orders which are effective pursuant to 42 U.S.C. § 6901 *et seq.*" (*Id.* at ¶ 18.) Count II alleges Nuisance pursuant to Ala. Code § 6–5–120 *et seq.* (*Id.* at ¶¶ 20–25.) Count III alleges Negligence. (*Id.* at ¶¶ 26–27.) Count IV alleges Wanton/Reckless Conduct. (*Id.* at ¶¶ 28–31.) Plaintiffs request that the court enter an order: (1) requiring Defendants to abate the nuisance by immediately removing all solid wastes from the Facility and/or closing the Facility in compliance with applicable state laws for open dumps; (2) requiring the Defendants to maintain a program adequate to control insects and vegetative control at the facility; (3) requiring Defendants to pay compensatory and punitive damages and interest and costs to which Plaintiffs may be entitled; (4) requiring Defendants to reimburse Plaintiffs for the cost of insect control on their premises; (5) requiring Defendants to pay Plaintiffs' attorneys fees and costs; and (6) requiring Defendants to pay other and further relief to which Plaintiffs may be entitled. (*Id.* at 5–6.)

Defendants "admit that they own real property located at the named location," (Defs.' Answer To First Am. Compl. at ¶ 10), but deny that "any Defendant served as an operator of the [Facility]." (*Id.* at ¶¶ 4–6.) Defendants also admit that Plaintiffs' business operations are "immediately adjacent" to the Facility. (*Id.* at ¶ 16.) Otherwise, Defendants deny all of the substantive allegations in Plaintiffs' First Amended Complaint.

In their Motion For Leave to File Third Party Complaint, brought pursuant to Federal Rule of Civil Procedure 14, Defendants seek to add as third-party defendants: (1) Elton G. Dyess; (2) Leon Hoffman; (3) Hoffman Tire, Inc.; (4) the Alabama State De-

partment of Public Health; (5) the Alabama State Board of Health; (6) the Alabama State Committee of Public Health; (7) Donald Williamson; (8) the Montgomery County Board of Health; (9) the Montgomery County Health Department; (10) the Montgomery County Commission; (11) the City of Montgomery; (12) the City of Montgomery Fire Department; and (13) American Energy Recyclers, Inc. (Defs.' Mot. at 1–2.) Defendants contend that, for various reasons, these proposed third-party defendants are liable for any clean-up necessary on their property, and request compensatory damages plus costs. (*See* Proposed Third–Party Complaint ¶¶ 33, 36, 38.)

■■■ Rule 14(a) provides in pertinent part that:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.

Fed.R.Civ.P. 14(a). Essentially, Rule 14(a) allows a defendant to assert a claim against any person not a party to the main action if that third person's liability on that claim is in some way dependent upon the outcome of the claim asserted by the plaintiff in the main action. "Rule 14(a) does not allow the defendant to assert a separate and independent claim even though the claim arises out of the same general set of facts as the main claim." *United States v. Olavarrieta,* 812 F.2d 640, 643 (11th Cir.), *cert. denied,* 484 U.S. 851, 108

S.Ct. 152, 98 L.Ed.2d 107 (1987); *see also United States v. Joe Grasso & Son, Inc.,* 380 F.2d 749 (5th Cir.1967)(noting that impleader is only permitted where the third party's liability is in some way derivative of the main claim; the third party "must be 'liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff.' ") (citations omitted); [1] 3 Moore's Federal Practice, ¶ 14.07 at 14–48 (2d ed. 1995)("Given the emphasis on the liberal reading of 'claim,' it is easy to lose track of a major limitation on the availability of impleader: it must be an assertion of the third-party defendant's derivative liability to the third-party plaintiff. Thus, an impleader claim cannot assert any and all rights to recovery arising from the same transaction or occurrence as the underlying action.")(footnotes omitted). The issue for the court to determine, therefore, is whether Defendants' claims against the proposed third-party defendants are derivative of Plaintiffs' claims against Defendants, and therefore proper impleader claims, or whether they are separate and independent, even though arising out of the same general set of facts as the main claim.

Without distinguishing between the private and governmental proposed third-party defendants,[2] Defendants contend that the proposed third-party defendants were the "actual operators" of the Facility, (Defs.' Reply at 2), and thus Defendants would be entitled to indemnity and/or contribution from these parties. (*Id.* at 2–4.) Plaintiffs object on the grounds that: (1) Plaintiffs' claims against the Defendants are unrelated to Defendants' claims against the proposed third-party defendants (Pls.' Resp. at 2); (2) Defendants have not established any right to contribution and/or indemnity from the proposed third-party defendants (*Id.* at 3); and (3) "the addition of the third-party defendants would

---

**1.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

**2.** The private (non-governmental) proposed third-party defendants include: (1) Elton G. Dyess; (2) Leon Hoffman; (3) Hoffman Tire, Inc.; and (4) American Energy Recyclers, Inc.

The governmental proposed third-party defendants include: (1) the Alabama State Department of Public Health; (2) the Alabama State Board of Health; (3) the Alabama State Committee of Public Health; (4) Donald Williamson; (5) the Montgomery County Board of Health; (6) the Montgomery County Health Department; (7) the Montgomery County Commission; (8) the City of Montgomery; and (9) the City of Montgomery Fire Department. (*See generally,* Pls.' Resp.)

significantly complicate and lengthen the trial." (*Id.* at 5.)

Inextricably intertwined with the analysis of the nexus between Defendants' claims against the proposed third-party defendants and Plaintiffs' claims is the question of whether Defendants can or must establish a right to contribution and/or indemnity from the proposed third-party defendants. If Defendants are entitled to indemnity and/or contribution from the proposed third-party defendants under either Plaintiffs' RCRA or state law claims, then impleader may be proper.

Plaintiffs object to impleader of the private (non-governmental) proposed third-party defendants primarily because they assert that their claims against the Defendants under the RCRA "arise out of the condition of the [Facility] as of the date of the abandonment rather than from the date of the tenancy" of the private proposed third-party defendants. (Pls.' Resp. at 2.) Plaintiffs contend that "[d]uring their tenancy, the facility was not subject to an action under 42 U.S.C. § 6972 and 6945 of the [RCRA] because of its status as a recycling facility. No claims by [Plaintiffs] are asserted against [Defendants] under the Federal Act for the time period prior to abandonment." (*Id.* at 2–3.) Essentially, Plaintiffs contend that their claims "do not arise until such time as the premises were abandoned by the private defendants," leaving Defendants as the sole liable Parties. (*Id.* at 4.)

Additionally, while Plaintiffs admit that a May 29, 1992 contract between Defendants and Elton G. Dyess and/or American Energy Recyclers, Inc. arguably creates a right of indemnification, Plaintiffs contend that both Dyess and American Energy "discharged any such liability in separate bankruptcy proceedings . . . [a]ccordingly, neither Dyess or American Energy Recyclers has any liability under that contract." (*Id.* at 5 (*citing* May 29, 1992 contract attached as exhibit to proposed third-party complaint) .) As for a May 1, 1995 contract between Defendants and Hoffman and Hoffman Tire, Inc., Plaintiffs contend that it "includes no indemnification provision and expressly states that Hoffman shall have 'no liability for the present inventory of tires.' Accordingly there is no legal basis for indemnification . . . ." (*Id.* (*quoting* May 1, 1995 contract attached as exhibit to proposed third-party complaint).)

As for the governmental proposed third-party defendants, Plaintiffs contend that Defendants cannot show that these parties "have any legal duty to indemnify them under either State [or] Federal law which is a requirement for Rule 14 impleader." (*Id.*) Plaintiffs contend that "the governmental defendants are at best joint tortfeasors and under applicable Alabama law there is no right of contribution or indemnification among joint tortfeasors." (*Id.*)

In response to Plaintiffs' arguments regarding the private proposed third-party defendants, Defendants point to a perceived dichotomy in Plaintiffs' argument: Plaintiffs argue that the Facility is an open dump *because* previous tenants abandoned tires, but also argue that their claims against the Defendants arise *at the time* the Facility was abandoned as a recycling facility. (Defs.' Reply at 1–2.) Defendants point to a February 26, 1996 letter from Plaintiffs' counsel to Hoffman Tire which Defendants contend shows that Plaintiffs were aware of the nature and operations of the Facility at that time. (*Id.* at 2.) Plaintiffs' counsel states in the letter that "the facility appears to have been converted into an unauthorized solid waste disposal facility operating under the guise of a tire recycling facility . . . violat[ing] both state and Federal environmental laws . . . . Moreover, even if it were considered a legitimate recycling facility, it is not being maintained in accordance with applicable permits." (Defs.' Reply at 2 (*citing* February 26, 1996 letter, Attach. A).) Defendants fail to show, however, the relevance of Plaintiffs' knowledge of the status of the Facility at a particular point in time to the legal issue of whether Defendants are entitled to contribution and/or indemnity from any of the proposed third-party defendants.

Defendants further contend that the Plaintiffs could have easily brought their action under 42 U.S.C. § 6972(a)(1)(B) rather than § 6972(a)(1)(A). (*Id.* at 3.) Section 6972(a) provides in pertinent part that:

> Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment

. . . . .

The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition or order, referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both . . . and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.

42 U.S.C.A. § 6972(a) (emphasis in original).

Section 6972(a)(1)(A) contemplates citizens' suits against any person (including government entities) "who is alleged to be in violation of any *permit, standard, regulation, condition, requirement, prohibition, or order*

which has become effective pursuant to this *chapter.*" 42 U.S.C.A. § 6972(a)(1)(A) (emphasis added). Section 6972(a)(1)(B) contemplates citizens' suits against any person (including government entities), past or present transporter, owner or operator of a treatment, storage, transportation or disposal facility; "*who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal* of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C.A. § 6972(a)(1)(B) (emphasis added). Assuming tires are a "solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment," *id.,* and without analyzing application of the Eleventh Amendment to the United States Constitution in this action, § 6972(a)(1)(B) would most likely encompass Defendants' allegations against the proposed third-party defendants. Nevertheless, Plaintiffs have brought suit only under § 6972(a)(1)(A). As Plaintiffs contend, Defendants are a "person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C.A. § 6972(a)(1)(A).[3] While contending that the Plaintiffs *could have* brought a claim pursuant to § 6972(a)(1)(B), Defendants do not articulate why this is relevant to the court's determination here, nor do they argue that the court should construe Plaintiffs' Complaint as alleging a cause of action under § 6972(a)(1)(B).

In its December 15, 1997 Order, the court requested that the Parties address the following issues in their supplemental pleadings:

(1) Whether 42 U.S.C. § 6972(a)(1)(A), and/or § 6945 and/or applicable RCRA provisions allow for contribution and/or indemnity. Plaintiffs argue that they

---

**3.** Although not clear from Plaintiffs' First Amended Complaint, Plaintiffs contend the Defendants "have failed to close the dump or otherwise bring the facility within applicable State and Federal environmental requirements," and "have ignored warnings by various state officials regarding the usage of the premises." (Pls.' Am.

Compl. at ¶¶ 15–16.). Plaintiffs also contend that "Defendants' conduct, as set forth hereinabove, is in violation of permits, standards, regulations, conditions, requirements prohibitions or orders which are effective pursuant to 42 U.S.C. § 6901 *et seq.*" (*Id.* at ¶ 18. (emphasis in original).)

do not. Defendants contend they do, but cite to case law addressing 42 U.S.C. § 6973 rather than 42 U.S.C. § 6972(a)(1)(A) or § 6945.

(2) Whether Defendants are entitled to contribution and/or indemnity under Plaintiff's state law claims, or whether, as Plaintiffs contend, the proposed third-party defendants are, at most, joint tortfeasors, and thus Defendants have no right of contribution or indemnity under Alabama law.

(3) If a right to contribution and/or indemnity exists, either statutorily or via state law, whether such right was abrogated, either contractually or through bankruptcy, as outlined above, or otherwise.

(4) Whether Defendants' proposed third-party complaint states a viable claim against the proposed governmental third-party defendants. The court is unclear as to Defendants' grounds for arguing that they are entitled to contribution and/or indemnity from the named governmental entities under either 42 U.S.C. § 6972(a)(1)(A), § 6945, or Plaintiff's state law claims. First, what actions have these entities taken that justify Defendants' contribution and/or indemnity claim? Second, does the Eleventh Amendment and/or other applicable law preclude Defendants' claim?

## II. Discussion

As noted, the crux of the court's Rule 14 analysis turns on whether the proposed third-party defendants "[are] or may be liable to the [Defendants] for all or part of the Plaintiff's claim against the [Defendants]." Fed.R.Civ.P. 14. In the interest of clarity, the court will first address the propriety of allowing Defendants' proposed Third Party Complaint in relation to Plaintiffs' RCRA allegations, and then will address Plaintiffs' state law claims.

### A. Count I—42 U.S.C. §§ 6972(a) and 6945

As noted above, § 6972(a)(1)(A) allows for suit "against any person ... who is alleged to be in violation of any permit, standard, regulation, conditions, requirement,

prohibition, or order which has become effective pursuant to this chapter." 42 U.S.C. § 6972(a)(1)(A). Plaintiffs allege that the Defendants are in violation of such rules effectuated pursuant to 42 U.S.C. § 6901 *et seq.* (Pls.' First Am. Compl. ¶ 18; *see also* Pls.' Br. In Supp. Summ. J. (alleging violations of Alabama regulations promulgated pursuant to the RCRA).) Additionally, Plaintiffs allege violations of § 6945, which, under certain conditions, and with certain exceptions, prohibits "any solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste." 42 U.S.C. § 6945.

Defendants' argument in support of their proposed third-party complaint, as it relates to the RCRA, rests chiefly on *United States v. Valentine*, 856 F.Supp. 627 (D.Wyo.1994). In *Valentine*, the court examined § 6973— not § 6972(a)—of the RCRA and concluded that a right to contribution or indemnity existed under that section. *Id.* at 632, n. 3, 637. Accordingly, Defendants argue that "[g]iven the equitable nature of the [RCRA], and the fact that Defendants here would have a right to indemnity and contribution had the government brought this action under § 6973 ... rather than the tenant of an adjoining landowner under § 6972, this Court should recognize that RCRA does allow for indemnity and contribution." (Defs.' Supp. at 4 (citing *Valentine*, 856 F.Supp. at 632 n. 3).)

Plaintiffs respond that notwithstanding *Valentine*, the Supreme Court's opinion in *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996) and the Eighth Circuit's opinion in *Furrer v. Brown*, 62 F.3d 1092 (8th Cir.1995), are dispositive of the issue raised here. (Pls.' Supp. at 3.) In *Meghrig*, the Supreme Court held that private citizens cannot recover costs for past clean-up efforts under § 6972(a) of the RCRA, *Meghrig*, 116 S.Ct. at 1256, but did not expressly answer the question presented here: Whether a private party may bring suit to recover costs for cleaning-up land that has not yet been cleaned up—essentially what the Defendants are seeking to do via their proposed third-party complaint. Ac-

knowledging as much, Plaintiffs argue that although *Meghrig* does not squarely address this issue, the Eight Circuit's *Furrer* opinion does, and the Supreme Court "tacitly acknowledged the correctness of *Furrer* [in *Meghrig,* accordingly,] it should be determinative as to any claims asserted by [the Defendants] for compensatory damages in Count I under RCRA." (Pls.' Supp. at 3.)

In *Meghrig,* the Supreme Court's unanimous decision resolved a conflict between the Eighth Circuit's *Furrer* holding, and the Ninth Circuit's holding in *KFC Western, Inc. v. Meghrig,* 49 F.3d 518 (9th Cir.1995). In *KFC Western,* KFC purchased land from the Meghrigs, which KFC subsequently discovered was contaminated with petroleum. *Meghrig,* 116 S.Ct. at 1253. After spending $211,000 removing and disposing of the tainted soil, KFC sought to recover these cleanup costs from the Meghrigs. *Id.* The Ninth Circuit held that KFC could recover these costs from the Meghrigs. *Id.*

A similar factual situation existed in *Furrer.* There, the Furrer's property was contaminated by petroleum, and they were ordered to remediate the contamination by a Missouri state agency. *Furrer,* 62 F.3d at 1093. The Furrers sought to recover their remediation costs from previous owners and lessees of the property. *Id.* The district court granted the previous owner's and lessee's motions to dismiss and the Eighth Circuit affirmed. *Id.* In denying the Furrers the right to seek recovery of clean-up costs from previous owners and/or occupiers of the land, the Eighth Circuit noted that:

> Our holding leaves the Furrers without a remedy under § 6972 for the recovery of the costs they have incurred in cleaning up their property. We are not unsympathetic to the Furrers' case, but we cannot justify inferring a remedy under § 6972 for the recovery of cleanup costs when we are unable to find any indication that Congress intended to create such a remedy. "The ultimate question is one of congressional intent, not one of whether this Court thinks that it can improve upon the statutory scheme that Congress enacted into law." *Touche Ross & Co. v. Redington,*

442 U.S. at 578, 99 S.Ct. at 2490, 61 L.Ed.2d 82 (1979).

*Furrer,* 62 F.3d at 1101–02.

In *Meghrig,* the Supreme Court noted that: "The Ninth Circuit's conclusion regarding the remedies available under RCRA conflicts with [the Eight Circuit's decision in *Furrer* ] .... We granted certiorari to address the conflict between the Circuits and to consider the correctness of the Ninth Circuit's interpretation of RCRA ... and now reverse." *Meghrig,* 116 S.Ct. at 1253–54.

The Supreme Court began its analysis by noting that:

> RCRA is a comprehensive environmental statute that governs the treatment, storage, and disposal of solid and hazardous waste.... Unlike the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), ... RCRA is not principally designed to effectuate the cleanup of toxic waste sites or to compensate those who have attended to the remediation of environmental hazards.... RCRA's primary purpose, rather, is to reduce the generation of hazardous waste and to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, "so as to minimize the present and future threat to human health and the environment."

*Meghrig,* 116 S.Ct. at 1254 (citations omitted).

Next, the court addressed the text of the statute. *Id.* As noted above, § 6972(a) is divided into a short introductory paragraph, section (1)(A), section (1)(B), section (2), and then a long conclusory paragraph addressing district court jurisdiction and remedies. In pertinent part, that paragraph reads:

> The district court shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order referred to in paragraph (1)(A), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to

order such other action as may be necessary, or both ... and to apply any appropriate civil penalties under section 6928(a) and (g) of this title.

42 U.S.C. § 6972(a). A "plain reading," *see Meghrig*, 116 S.Ct. at 1254, of this paragraph indicates that the relief authorized under § 6972(a)(1)(A) is limited to: (1) "enforce[ment of] the permit, standard, regulation, condition, requirement, prohibition, or order referred to in paragraph (1)(A);" (2) "to order such other action as may be necessary, or both;" and (3) "to apply any appropriate civil penalties under section 6928(a) and (g)." *Id.*

Section 6928(a) authorizes the Administrator to issue an order assessing a civil penalty, "or the Administrator may commence a civil action in the United States district court in the district in which the violation occurred for appropriate relief, including a temporary or permanent injunction." 42 U.S.C. § 6928(a)(1). Ostensibly, such relief is premised on the Administrator's commencement of an action in the United States district court in the district in which the violation occurred. *Id.* Section 6928(g) provides for a civil penalty for violations of the subchapter. 42 U.S.C. § 6928.

In *Meghrig*, the Supreme Court found that a "plain reading" of the remedy provisions of § 6972(a)(1)(B) indicated that a private citizen suing under § 6972(a)(1)(B):

> could seek a mandatory injunction, i.e., one that orders a responsible party to "take action" by attending to the cleanup and proper disposal of toxic wastes, or a prohibitory injunction, i.e., one that "restrains" a responsible party from further violating RCRA. Neither remedy, however is susceptible of the interpretation adopted by the Ninth Circuit, as neither contemplates the award of past cleanup costs, whether these are denominated "damages" or "equitable restitution."

*Meghrig*, 116 S.Ct. at 1254. Tellingly, after specifically examining the remedy provisions of § 6972(a), including the granting of authority to order "such other action as may be necessary, or both" and "to apply any appropriate civil penalties under section 6928(a) and (g)," the court found that although injunctive relief was warranted—because of the text of the statute—monetary relief in

the form of recovery of past clean-up costs was not. *Id.*

The court went on to note that a comparison between CERCLA and the relief provided under the RCRA's citizen suit provision disclosed that "Congress ... demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and that the language used to define the remedies under RCRA does not provide that remedy." (*Id.* at 1255 (noting, *inter alia*, that CERCLA § 9613(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable")).

Finally, the court rejected the argument that under § 6972(a)(1)(B), equitable restitution of money previously spent on clean-up efforts could be recovered based on a line of cases holding that district courts "retain inherent authority to award any equitable remedy that is not expressly taken away from them by Congress." *Meghrig*, 116 S.Ct. at 1256. In so doing, the court noted that the rejected argument failed to rely on the remedies expressly provided in § 6972(a). *Id.* The Supreme Court then concluded that:

> RCRA does not prevent a private party from recovering its cleanup costs under other federal or state laws, see § 6972(f) (preserving remedies under statutory and common law), but the limited remedies described in § 6972(a), along with the stark differences between the language of that section and the cost recovery provisions of CERCLA, amply demonstrate that Congress did not intend for a private citizen to be able to undertake a clean up and then proceed to recover its costs under RCRA.... [W]here Congress has provided "elaborate enforcement provisions" for remedying the violation of a federal statute, as Congress has done with RCRA and CERCLA, "it cannot be assumed that Congress intended to authorize by implication additional judicial remedies for private citizens suing under" the statute. " '[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.' "
>
> *Without considering whether a private party could seek to obtain an injunction*

*requiring another party to pay cleanup costs which arise after a RCRA citizen suit has been properly commenced ... or otherwise recover cleanup costs paid out after the invocation of RCRA's statutory process, we agree with the Meghrigs that a private party cannot recover the cost of a past cleanup effort under RCRA .... Section 6972(a) does not contemplate the award of past cleanup costs.*

*Meghrig,* 116 S.Ct. at 1256 (citations omitted)(emphasis added).

Defendants' argument that *Valentine,* which found a right to contribution/indemnity under § 6973, and not § 6972(a), controls, must fail in light of the Supreme Court's language in *Meghrig.* The Supreme Court's determination that Congress knows how to provide for recovery of clean-up costs, as evidenced by specific CERCLA provisions, but failed to provide that remedy in the RCRA, apparently precludes recovery of future costs (be they indemnity or contribution) as well as past costs. *Meghrig,* 116 S.Ct. at 1254–55. Although the Supreme Court did not expressly conclude that recovery of future costs is barred, several lower courts have determined that only injunctive relief is available, and that no costs, future or past, could be recovered. *See, e.g., Walls v. Waste Resource Corp.,* 761 F.2d 311, 316 (6th Cir. 1985); *Envtl. Defense Fund, Inc. v. Lamphier,* 714 F.2d 331, 337 (4th Cir.1983); *Kaufman and Broad–South Bay v. Unisys Corp.,* 822 F.Supp. 1468 (N.D.Cal.1993); *Commerce Holding Co. v. Buckstone,* 749 F.Supp. 441 (E.D.N.Y.1990). Other courts have found that the RCRA citizen suit provision does not provide a private cause of action for compensatory, economic, or punitive damages. *See, e.g., 325–343 E. 56th St. Corp. v. Mobil Oil Corp.,* 906 F.Supp. 669 (D.D.C.1995); *Prisco v. State of New York,* 902 F.Supp. 374, (S.D.N.Y.1995); *Triffler v. Hopf,* 1994 WL 643237 (N.D.Ill. Nov.4, 1994); *First San Diego Properties v. Exxon Co.,* 859 F.Supp. 1313 (S.D.Cal.1994); *Gache v. Town of Harrison, N.Y.,* 813 F.Supp. 1037 (S.D.N.Y.1993); *Commerce Holding,* 749 F.Supp. at 441. And, until the Supreme Court's *Meghrig* decision, the Ninth Circuit and the District Court of Wyoming were in a very small minority of courts that allowed recovery of clean-up costs under § 6972(a). *See Valentine,* 856 F.Supp.

at 631–34; *see also United States v. Price,* 688 F.2d 204 (3d Cir.1982)(allowing claim for equitable restitution of clean-up costs pursuant to RCRA citizen suit provision); *Bayless Inv. and Trading Co. v. Chevron U.S.A., Inc.,* 39 Env't Rep. Cas (BNA) 1428 (D.Ariz. 1994); *but see Furrer,* 62 F.3d at 1092; *Walls,* 761 F.2d at 311; *325–343 E. 56th Str.,* 906 F.Supp. at 669; *Prisco,* 902 F.Supp. at 374; *Murray v. Bath Iron Works Corp.,* 867 F.Supp. 33 (D.Maine 1994); *Portsmouth Redev. & Housing Auth. v. BMI Apartments Assocs.,* 847 F.Supp. 380 (E.D.Va.1994).

Additionally, in *Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.,* 174 F.R.D. 609 (M.D.Penn.1997), the court looked to *Meghrig,* and subsequent cases, and concluded that § 6972(a) did not allow for recovery of *current or future* clean-up costs. *Id.* at 617–618 (citing to *Agricultural Excess and Surplus Ins. Co. v. A.B.D. Tank & Pump Co.,* 1996 WL 515088 (N.D.Ill. Sept.6, 1996)). The *Andritz* court noted the *Agricultural Excess* court's conclusion that "neither the Supreme Court's ruling in *Meghrig,* nor the remedial language of ... RCRA distinguish between cleanup costs incurred before RCRA has been invoked from those incurred afterwards." *Id.* And, both courts concluded that given the *Meghrig* court's strict adherence to the RCRA statutory scheme, a cause of action for current or future costs could not be inferred from § 6972(a)(1)(A). *Id.* As the *Andritz* court noted:

[W]e are firmly persuaded that inferring such a cause of action would be inconsistent with the Supreme Court's interpretation of RCRA in *Meghrig.* A major factor in the Court's ruling was the absence of a statutory scheme governing the filing and pursuit of such claims. Had it been Congress' intent to provide such a cause of action, a framework would have been provided in the statute. That was the conclusion the Court reached in contrasting RCRA with CERCLA. The concerns the Court expressed about straying from congressional intent are no less persuasive in this context than in the context of past costs. No framework has been provided by Congress for pursuing a private right of action for costs, a clear signal that Con-

gress did not intend to create such a cause of action.

*Andritz*, 174 F.R.D. at 618.

Based on the foregoing, the court finds that Defendants have not established that they have a right to indemnity/contribution from the proposed third-party defendants under the RCRA. While such a result may seem inequitable, such a conclusion is mandated by existing law. As the *Furrer* court noted, "remediation of contaminated property attaches, without regard to fault, to the then owner of the property." *Furrer*, 62 F.3d at 1098–99. Further, the court is not unmindful of the fact that § 6972(f) specifically reserves state remedies. 42 U.S.C. § 6972(f). Accordingly, because Defendants' cannot establish that their proposed third-party complaint addresses claims derivative of Plaintiffs' claims against the Defendants, the court finds that Defendants' Motion For Leave To File Third–Party Complaint, based on the issue of RCRA liability, is due to be denied.[4]

**B. Counts II (Nuisance), II (Negligence), and IV (Wanton/Reckless Conduct)**

■ As noted above, for impleader to be proper, Rule 14 requires that the proposed third-party defendants be "liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff." *Joe Grass & Son*, 380 F.2d at 749 (citation omitted). "Impleader is only permitted where the third party's liability is in some way derivative of the main claim." *Id.* To best ascertain whether impleader is proper, the proposed third-party defendants must be divided into two categories: Governmental Proposed Third–Party Defendants and Private Proposed Third–Party Defendants.

**1. *Governmental Proposed Third–Party Defendants***

The governmental proposed third-party defendants include: (1) the Alabama State Department of Public Health; (2) the Alabama State Board of Health; (3) the Alabama State Committee of Public Health; (4)

Donald Williamson; (5) the Montgomery County Board of Health; (6) the Montgomery County Health Department; (7) the Montgomery County Commission; (8) the City of Montgomery; and (9) the City of Montgomery Fire Department. It is clear from the proposed Third–Party Complaint that Defendants seek only monetary damages from the proposed Third–Party defendants. (*See* Defs.' Proposed Third–Party Compl. at 8,9.)

■ Before addressing the contribution/indemnity issue, the court notes that Article I, § 14 (1901) of the Alabama Constitution affords the state, state agencies, and state officials sued in their official capacities, complete immunity from suit: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." Pursuant to this section, the state, state agencies and government employees in their official capacities may not be sued for monetary damages. *Phillips v. Thomas*, 555 So.2d 81, 83 (Ala. 1989). To ascertain whether an entity is an arm of the state, the court must examine state law. *Brown v. East Central Health Dist.*, 752 F.2d 615, 617 (11th Cir.1985) (citations omitted).

■ By statute, the Alabama State Department of Public Health (1), the Alabama State Board of Health (2), and the Alabama State Committee of Public Health (3) are arms of the state. Ala.Code § 22–1–1 et seq. (1975); *see also* Defs.' Proposed Third–Party Compl. at 3, ¶¶ 8–10. Consequently, each is entitled to assert its sovereign immunity in this action.

■ Doctor Donald Williamson (4), the State Health Officer, is sued in his official capacity, and, consequently, is entitled to assert sovereign immunity. *See* Ala.Code § 22–2–8; *see also* Defs.' Proposed Third–Part Compl. at 3, ¶ 11. The Supreme Court of Alabama has recognized several types of relief that do not violate the constitutional prohibition against suing the state. These exceptions, which follow, apply only when the

---

**4.** The court disagrees with Defendants' assertion that "[w]ithout the opportunity for indemnity or contribution, Defendants would have no right to litigate the liability of other parties and could be forced to bear the full cost of cleanup despite the existence of other responsible parties." (Defs.' Supp. at 4.) A review of *Meghrig*, other case law, and the RCRA itself, discloses that other avenues of recovery are open to the Defendants.

litigant names a state employee in his or her official capacity and seeks relief other than money: "(1) actions brought to compel state officials to perform their legal duties; (2) actions brought to enjoin state officials from enforcing an unconstitutional law; (3) actions to compel state officials to perform ministerial acts; and (4) actions brought under the Declaratory Judgment Act." *State Dep't of Human Resources v. Kelly,* 623 So.2d 738, 740 (1993) (citation omitted).

The only relief sought here is monetary. The Defendants do not seek injunctive or declaratory relief, nor are they asking the court to compel Dr. Williamson to perform a legal duty or ministerial act. Accordingly, the court finds that pursuant to the Article I, § 14 of the Alabama Constitution, Dr. Williamson is immune from suit.

▮▮▮ County Boards of Health are agencies of the state and are entitled to sovereign immunity. *Bathgate v. Mobile County Board of School Commissioners,* 689 So.2d 109 (Ala.Civ.App.1996), *cert. denied* Ala. 1960513 (1997). Consequently, the Montgomery County Board of Health (5) is entitled to assert its sovereign immunity in this action, as is the Montgomery County Health Department (6), the administrative arm of the Board of Health. (*See* Defs.' Proposed Third–Party Compl. at 4, ¶¶ 12–13.)

▮▮▮ Defendants have attempted to sue the Montgomery County Commission (7), solely because of its statutory right to levy a county tax to support the county's health department, health officer and health projects within the county. (*Id.* at 4, ¶ 14, (citing Ala.Code. § 22–3–10 (1975)).) First, § 22–3–10 grants the Montgomery County Commission the "discretion" to levy such a tax, and is intended to be "cumulative and remedial," and "not exclusive." There is no evidence in the record that the Montgomery County Commission has actually exercised its discretion and levied such a tax in support of its county health agencies or projects. Even if it has, Defendants have failed to cite any authority that would support their argument that § 22–3–10 allows for the imposition of liability upon the Commission solely because of its funding relationship to the county Health Department.

Further, the only specific allegation against the Montgomery County Commission is that it is "charged with the duty of regulating facilities" such as the Facility at issue, and that it failed to "properly regulate and enforce requirements" upon various parties. (Defs.' Proposed Third–Party Compl. at 8, ¶ 35; *see also id.* at 9, ¶ 38.) Defendants fail, however, to specify specific statutory or regulatory provisions imposing such duties on the Montgomery County Commission. Nor is the Montgomery County Commission mentioned in the "Allegations" portion of Defendants' proposed Third–Party Complaint.

▮▮▮ Even assuming that the Commission has a "duty" to "regulate and enforce requirements," Defendants have failed to cite any authority allowing for a cause of action against a governmental agency for failing to enforce regulations against private parties. Even if such authority exists, there is no liability for the failure to abate a nuisance, nor in the maintenance of a fire department. *See Hillman v. City of Anniston,* 214 Ala. 522, 108 So. 539, 540–41 (1926); *see also City of Mobile v. Sullivan,* 667 So.2d 122, 126–27 (1995); *Rich v. City of Mobile,* 410 So.2d 385 (Ala.1982).

▮▮▮ Turning to the City of Montgomery (8), and its Fire Department (9), Defendants have not established that the Fire Department is a separate legal entity capable of being sued. Rather, it is an agency of the City of Montgomery. *See* Code Of The City Of Montgomery, Alabama § 13 et seq. Defendants allege that the City's Fire Department allowed the Facility to continue to operate—in violation of the fire code—while Defendants' lessees occupied the site. Essentially, Defendants contend that the City should pay the costs of remediating the Facility for the City's failure to shut down the Facility and force the then occupants to clean it up.

▮▮▮ "Generally, a municipality is not liable for negligent or deficient electrical, plumbing, or other inspections ...." *City of Mobile v. Sullivan,* 667 So.2d 122, 126–27 (1995). None of the few recognized exceptions to this general rule apply in this action. *See, e.g., id.; Long v. Jefferson County,* 623

So.2d 1130 (Ala.1993)(holding that county owes duty to exercise reasonable care in construction and maintenance of sewer and drains under its control, and is responsible for damages caused by negligent operation and maintenance of such); *City of Mobile v. Jackson,* 474 So.2d 644 (Ala.1985)(holding that city was not immune because once municipality constructs drainage system, a duty of care arises); *Williams v. City of Tuscumbia,* 426 So.2d 824 (Ala.1983)(holding that once municipality organizes and provides for a fire department, a "special duty" arises to act in a skillful manner to respond to calls informing the department of a fire); *see also Ziegler v. City of Millbrook,* 514 So.2d 1275 (Ala.1987); *Craig v. City of Mobile,* 658 So.2d 438 (Ala.1995).

In *City of Dothan v. Sego,* 646 So.2d 1363 (Ala.1994), for example, the City of Dothan did not have a drainage ditch easement for the ditch at issue, and did not routinely maintain the ditch, even though it had responded, in the past, to emergency calls by the plaintiff. The court found that a negligence action could not be supported based on the mere fact that the city had responded to plaintiff's calls and had undertaken occasional clearing efforts. *Id.* The court found that no duty had arisen to the plaintiff. Similarly, the mere fact that the City's Fire Department has inspected the premises and told Defendants' lessees that the Facility was in violation of applicable fire codes, does not give rise to a duty to the Defendants to ensure that the tires at issue were disposed of.

The court emphasizes that in contrast to *Williams,* cited above, what is at issue here is the clean-up of discarded tires, not an alleged wanton or negligent response to a fire call. This is not a situation where the Fire Department failed to respond to a fire call or even negligently inspected a premises and the premises then burned down, causing damages. In this action, Defendants' lessees could have brought the Facility in line with the applicable fire code without necessarily removing the tires. There is no evidence in the record that fire code compliance requires that the tire be removed; exactly what the Defendants seek to have the proposed Third–Party Defendants do.

Finally, Alabama Code § 11–47–23 provides a six month statute of limitations for suits against the City. *See* Ala.Code § 11–47–23. As Plaintiffs note, "[t]he challenged conduct [ ] is believed to arise from the City's decision to allow Dyess and/or Hoffman to continue to operate despite the fact that the site was in violation of the City Fire code. The latest possible date at which either was on the premises was April 12, 1996 (Exhibit M)." Clearly, § 11–47–23 precludes Defendants' claims against the City, and Defendants do not argue any ground for abrogating application of § 11–47–23.

Based on the foregoing, the court finds that Defendants' Motion For Leave To File Third–Party Complaint against the Governmental Proposed Third–Party Defendants (the Alabama State Department of Public Health, the Alabama State Board of Health, the Alabama State Committee of Public Health, Donald Williamson, in his official capacity, the Montgomery County Board of Health, the Montgomery County Health Department, the Montgomery County Commission, the City of Montgomery, and the City of Montgomery Fire Department) is due to be denied.[5]

---

5. The court also notes that as to the RCRA claims, the Eleventh Amendment prohibits actions seeking a monetary award from a state, state agency or state employee sued in his or her official capacity. *See Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). Lawsuits against a state official in his or her official capacity are suits against the state when "the state is the real, substantial party in interest." *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). When a plaintiff seeks monetary relief from a state employee in his or her official capacity, as here, "the state is considered the real party in interest because an award of damages would be paid by the state." *Id.* (citation omitted). Even if Defendants' were entitled to maintain their RCRA claims against the Alabama State Department of Public Health, the Alabama State Board of Health, the Alabama State Committee of Public Health, Donald Williamson in his official capacity, the Montgomery County Board of Health, and the Montgomery County Health Department, each of these persons or entities would be immune from suit under the Eleventh Amendment.

### 2. Private Proposed Third–Party Defendants

#### a. AER and Dyess

■ Defendants contend that in May of 1992, they entered into a lease agreement with AER, acting through Dyess, its President. Pursuant to the May 1992 lease, AER agreed to post a bond to provide for clean-up of the Facility. The lease also indemnified the Defendants from any and all claims. (Defs.' Proposed Third–Party Compl. at 4, ¶ 17.) AER then failed to post the bond, but Dyess executed a written personal guarantee. (*Id.* at 5, ¶ 18; Pls.' Resp., Ex. D.) In 1994, both AER and Dyess filed for bankruptcy. (*Id.* at 5, ¶ 21.) AER and Dyess abandoned the Facility in March or April of 1995. (*Id.* at 5, ¶ 21.)

Plaintiffs contend that the bankruptcy proceedings discharged AER's responsibility, under the lease, and Dyess' responsibility, under the personal guarantee, to clean-up the tire inventory. Defendants' contend that they did not, arguing that "under certain conditions, RCRA liability which requires a bankrupt debtor to clean up a site cannot be discharged. *AM International, Inc., v. Datacard Corp.*, 106 F.3d. 1342 (7th Cir. 1997)[sic]."⁶ (Defs.' Resp. at 4.)

Turning first to AER, Plaintiffs contend that:

> On April 14, 1994, [AER], the entity with which Neely had an indemnification agreement, filed a bankruptcy proceeding under Chapter 11 of the Bankruptcy Code. Neely *et al* filed claims in that proceeding for $108,000.00 "plus additional cleanup costs." A plan was confirmed by the bankruptcy Court on November 17, 1994 which resulted in an adjudication as to the claims for past due rent and an undertaking on the part of the debtor to remove the existing pile of tires within two years. (Exhibit C).

(Pls.' Resp. at 6.) A review of the record discloses that AER's reorganization plan clearly requires AER to "remove the Debtor's inventory of tires within 24 months from the effective date." (Pls.' Resp., Ex. C.) The plan also provides a timetable for specific reductions. (*Id.*)

Plaintiffs correctly note that under 11 U.S.C. § 1141, an order confirming a plan "discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141. Defendants contend, however, that "[o]nly orders which can be turned into a 'right to payment' are considered dischargable 'claims' for bankruptcy purposes." (Defs.' Supp. at 12 (citing 11 U.S.C. § 101(5)(A)).) Defendants argument has merit, particularly because 11 U .S.C. § 105(12) defines "debt" as "liability on a claim." For § 1141 to apply, the "debt" would have to be some sort of monetary liability. *See, e.g., Datacard Corp.*, 106 F.3d at 1348. Defendants argue that they are not suing AER to recover their own costs for remediating the site, which would be barred under *Meghrig*, 116 S.Ct. at 1251. Instead, they are suing to enforce AER's agreement to clean-up the site.

■ Turning to Dyess, his personal guarantee states that:

> Guarantor does hereby agree to personally cause the company to perform all of its obligations described herein [including a commitment to clean-up the premises] and required under the lease from the trust and, should [AER] fail to do so, to personally perform all such obligations at his own expense.

> Guarantor's obligation hereunder shall be joint and several with that of the Company, and Guarantor agrees to perform and to pay at his own expense all such cleanup and removal regardless of any bankruptcy, insolvency or release for any reason of the Company from its obligations to do so.

(Pls.' Resp., Ex. D at 3, ¶ 7.) Although Plaintiffs argue that this guaranty was discharged upon the bankruptcy court's confirmation of Dyess' Chapter 13 bankruptcy, (Pls.' Resp. at 12–13), it is clear from the transcript of the bankruptcy proceedings that Neely's *claim* was not withdrawn, rather, only a procedural motion was. (*Id.*, Ex. G.) Consequently, Plaintiffs' collateral estoppel argument is misplaced (*Id.* at 9); Defendants never waived their claim against Dyess. The question becomes, therefore, whether the bankruptcy court's confirmation of Dyess' plan

---

**6.** It is clear that the correct citation should be 106 F.3d 1342 (7th Cir.1997).

discharged the personal guarantee to clean-up the Facility. Similar to their claim against AER, Defendants seek enforcement of Dyess' personal guarantee, not monetary recovery for future clean-up costs.

Because no monetary relief is sought from AER or Dyess, (as opposed to the Governmental proposed third-party defendants), the court finds that the bankruptcy proceedings at issue did not discharge AER or Dyess' agreements to clean-up the Facility. Consequently, the court finds that Plaintiffs' Motion For Leave To File Third–Party Complaint, as it relates to AER and Dyess, is due to be granted.

### b. Hoffman Tire and Hoffman

On May 1, 1995, the Defendants and Hoffman Tire, acting through its President, Leon Hoffman, entered into a lease agreement. (Defs.' Proposed Third–Party Compl. at 5–6, ¶ 23.) The lease provided that Hoffman Tire would be given two years free rent at the Facility in exchange for Hoffman Tire making reasonable, good faith efforts to remove the tire inventory abandoned by Dyess and AER. (*Id.*) The lease also provided that "Lessee shall nave no liability for the present inventory of tires except as set out in this Lease and those assumed by Lessee in agreement with governmental units and agencies." (Pls.' Resp., Ex. N, Addendum, ¶ 3.) Hoffman Tire abandoned the Facility in April 1996. (*Id.* at 6, ¶ 26.)

 Defendants do not argue that the indemnification provision has somehow been abrogated. Rather, their only argument is that of the tires currently on the Facility, it is not clear which were brought there under the Hoffman lease term. (Defs.' Supp. at 8, 12–13.) There is no indication that Hoffman Tire is absolved from liability for tires accumulated during their tenancy. Although it is clear that Hoffman Tire is not liable for the inventory of tires on the premises as of May 1, 1995, and Defendants do not allege that Hoffman Tire failed to put forth reasonable, good faith efforts to clean-up the accumulated tires, Hoffman Tire may be liable for tires accumulated during its lease term. Consequently, the court finds that Defendants' Motion For Leave To File Third–Party Com-

plaint, as it relates to Hoffman Tires is due to be granted.[7]

### III. CONCLUSION AND ORDER

The court notes that in making the above findings, the court intimates no view on who, what, or what combination of persons or entities, is or are responsible for the clean-up of the Facility at issue. Rather, in this Order, the court merely finds that at this stage of the proceedings, on the record before the court, Rule 14 claims against Dyess, AER and Hoffman Tire are properly brought.

Based on the foregoing, it is CONSIDERED and ORDERED that Defendants' Motion For Leave To File Third–Party Complaint be and the same is hereby GRANTED as to Elton G. Dyess, Hoffman Tire, Inc, and American Energy Recyclers, Inc. Otherwise, Defendants' Motion is DENIED.

---

**7.** Leon Hoffman, in his individual capacity was not a party to the contract at issue.